**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CONFLUENT SURGICAL INC., INTEGRA LIFESCIENCES CORPORATION, AND INTEGRA LIFESCIENCES SALES LLC,<br><br>Plaintiffs,<br><br>v.<br><br>HYPERBRANCH MEDICAL TECHNOLOGY, INC.,<br><br>Defendant. | C.A. No. 17-688-LPS-CJB |

**PLAINTIFFS' LETTER MOTION TO THE HONORABLE CHRISTOPHER J. BURKE
SEEKING AN ORDER COMPELLING DISCOVERY**

*Of Counsel:*

Robert F. Altherr, Jr.
Christopher B. Roth
**BANNER & WITCOFF, LTD.**
1100 13th Street NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000

Timothy C. Meece
Jason S. Shull
**BANNER & WITCOFF, LTD.**
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606
Telephone: (312) 463-5000

John P. Iwanicki
**BANNER & WITCOFF, LTD.**
28 State Street, Suite 1800
Boston, MA 02109
Telephone: (617) 720-9600

**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Karen L. Pascale (#2903) [kpascale@ycst.com]
Robert M. Vrana (#5666) [rvrana@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs, Integra LifeSciences Corp., Integra LifeSciences Sales LLC, Confluent Surgical, Inc., and Incept LLC*

January 25, 2019

Dear Judge Burke:

Plaintiffs respectfully submit this letter motion to compel discovery in accordance with the Court's Oral Order of January 22, 2019.

## I. HyperBranch's Refusal to Answer RFA Nos. 2, 3, 5, 6, 8, 9, 11, 12, 14, 15, 17, 18, 20, 21, 30, 31, 34-36, and 39-42 is Unjustified.

The RFAs ask HyperBranch to admit or deny simple undisputed facts related to the Accused Products. For example:

- Admit that HyperBranch has sold the HyperBranch Products in the United States after having actual knowledge of United States Patent No. 8,210,453. (Ex. A, RFA No. 2, p. 5).

- Admit that HyperBranch provides Instructions for Use for the HyperBranch Products. (Ex. A, RFA No. 30, p. 51).

- Admit that HyperBranch provides the HyperBranch Products with instructions regarding how to assemble and use the HyperBranch Products. (Ex. A, RFA No. 31, p. 52).

- Admit that HyperBranch has provided training on the setup and use of the HyperBranch Products to physicians in the United States. (Ex. A, RFA No. 34, p. 57).

- Admit that HyperBranch sells the HyperBranch Products with the intent that the HyperBranch Products will be assembled and used in a manner consistent with the Instructions for Use provided with the HyperBranch Products. (Ex. A, RFA No. 42, p. 69).

HyperBranch refuses to answer these RFAs because the requests allegedly seek admissions relating to "multiple products." (*See* Ex. B). However the term "HyperBranch Products" is a single Product Class per the definition set forth in Plaintiffs' Requests for Admission (Ex. D at 1) and is defined as "the Adherus AutoSpray Dural Sealant product and/or Adherus AutoSpray Extended Tip (ET) Dural Sealant product." Using "and/or" in the definition means that the Adherus products are grouped as a single, non-controversial, uncomplicated "product class." There are no material differences between the Adherus products that prevents HyperBranch from answering these simple requests. HyperBranch's position is particularly disingenuous in view of the fact that it is "speaking out of both sides of its mouth" on this issue as it took the exact opposite position earlier in this case and, in response, Integra voluntarily agreed to admit what it could and deny the rest despite the disparate groupings HyperBranch had used in its RFAs, and the Court indicated that this approach of admitting what Integra could and denying the rest was proper.

HyperBranch's "multiple products" objection is untenable. (Ex. C at 1-2). *See Pecover v. Elec. Arts, Inc.*, No. 08-CV-02820 CW (NC), 2012 WL 12921363, at *4 (N.D. Cal. Mar. 23, 2012) ("The Court finds that plaintiffs' responses to the requests in this category do not meet the

The Honorable Christopher J. Burke
January 25, 2019
Page 2

requirements or goals of Rule 36. [The] objection that the requests are 'compound' is unpersuasive, because Rule 36 allows responding parties to 'qualify an answer or deny only a part of a matter' as long as the answer specifies the part admitted and qualifies or denies the rest…Indeed, Rule 36 requires responding parties to 'admit to the fullest extent possible, and explain in detail why other portions of a request may not be admitted.'") (internal citations omitted). The alleged compound nature (*i.e.*, "multiple products") of the requests does not excuse HyperBranch's obligation to respond to them. "Compound requests that are capable of separation into distinct components and that follow a logical or chronological order…should be denied or admitted in sequence with appropriate designation or qualification." *See, e.g., Tequila Centinela, S.A. de C. V. v. Bacardi & Co. Ltd.*, 247 F.R.D. 198, 203 (D.D.C. 2008) (granting motion to compel answering RFAs in full since each compound inquiry was separable into 19 identifiable alcoholic beverages) (quoting *Diederich v. Dep't of the Army*, 132 F.R.D. 614, 621 (S.D.N.Y. 1990)).

HyperBranch previously answered similar RFAs related to an even broader class of products in Case No. 15-819 (LPS) (CJB) ("the '819 Litigation") without qualification or objection to the scope of HyperBranch product group.[1] (*See* Ex. E at 2-3 (defining "HyperBranch Products" as the 1) Adherus Autospray Dural Sealant; 2) Adherus AutoSpray Extended Tip (ET) Dural Sealant; 3) Adherus Dural Sealant; and 4) Adherus Spinal Sealant); Ex. F). For example, HyperBranch admitted "HyperBranch provides Instructions for Use for HyperBranch Products." (Ex. E at 28). HyperBranch's refusal to admit these and other facts from the '819 Litigation for a smaller product group in the present case is unjustified and vexatious. There is no need for this gamesmanship.

**II. The Requested ESI Search Terms Are Not an Undue Burden**

Plaintiffs have been (and remain) willing to work with HyperBranch to agree upon an appropriate set of search terms for HyperBranch's ESI searches. HyperBranch's proposed search terms, however, are unduly narrow. Plaintiffs have agreed to narrow the disputed search term to "adherus w/10 sales*" from an original proposal of "adherus w/15 sales" as an offer of compromise. Yet HyperBranch's counterproposal is for a search term of "adherus w/2 sales" that roughly produces 6000 documents opposed to 12,000 additional documents produced with Plaintiffs' current term proposal.

HyperBranch's proposal limits the production of highly relevant documents to the point where this highly relevant information (*e.g.,* the name of the accused product in combination with a statutory infringing act) is improperly limited from production. For example, a document

---

[1] HyperBranch's sole objection to the term "HyperBranch Product(s)" was "to the extent it seeks refers to and includes products not at issue in this Action, such as HyperBranch's OcuSeal product." (Ex. E. at 3).

The Honorable Christopher J. Burke
January 25, 2019
Page 3

with the phrase "…sales of the Adherus products…" or even a spreadsheet with the title "Adherus AutoSpray Third Quarter 2018 Sales" would be excluded under HyperBranch's proposal.  Further, it is difficult to understand how an additional alleged 12,000 documents (a number which does not take into account the agreement that documents from the '819 Litigation are already deemed produced in the current matter and do not have to be produced again) is now unduly burdensome in a case that has produced hundreds of thousands of documents.  Further, HyperBranch has failed to show how the request is overbroad and unduly burdensome other than the unsupported argument of its counsel.  *See e.g., Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. CIV.A. 09-290, 2010 WL 4338388, at *1 (W.D. Pa. Oct. 27, 2010) (rejecting the accused infringer's argument that since it already produced over 5.5 million pages of documents patent owner's additional document request was "unreasonably cumulative and, as such, imposes an undue burden"); *see also Tulip Computers Int'l B.V. v. Dell Computer Corp.*, C.A. No. 00-981-RRM, 2002 WL 818061, at *4 (D. Del. Apr. 30, 2002) (rejecting accused infringer's arguments "that a production of executive's e-mails is cumulative and that its only purpose is to harass [the] senior executives").

### III. The Addition of Mr. Spencer S. Stiles or His Equivalent as an ESI Custodian

Mr. Styles is the Group President, Neurotechnology, Instruments and Spine for Stryker Corporation ("Stryker")—the now parent company of HyperBranch (Stryker acquired HyperBranch in October 2018).  Ex. G.  As the Group President now responsible for the manufacture and sale of HyperBranch's accused products, Mr. Stiles[2] would very likely have received at the time of the acquisition and placement of the HyperBranch accused products under the umbrella of his division's responsibilities, relevant information as to the historical, current, and projected manufacture and sale of the accused products – information which is highly relevant to the current litigation.  HyperBranch argues that Mr. Stiles is not an appropriate custodian because he "is not now, nor has he ever been, an employee of HyperBranch."  Ex. G.

Mr. Stiles's formal employer is not a prerequisite to be an appropriate custodian for ESI searches and production.  This Court has held that if a subsidiary has "control over documents in the possession of its parent," the subsidiary is required to provide the requested discovery. *Robert Bosch LLC v. Alberee Prod., Inc.*, C.A. No. 12-574-LPS, 2017 WL 376270, at *3 (D. Del. Jan. 24, 2017).  "[W]here the litigating corporation is the subsidiary and the parent possesses the records, courts have found control to exist on…alternate grounds" including: 1) the alter ego doctrine [. . .] 2)  the subsidiary was an agent of the parent in the transaction giving rise to the lawsuit 3) the relationship is such that the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and documents helpful for use in litigation 4)

---

[2] Plaintiffs are willing to substitute the appropriate Group President, if not Mr. Stiles, which now is responsible for the manufacture, sales and offer for sale of the accused HyperBranch products.

The Honorable Christopher J. Burke
January 25, 2019
Page 4

there is access to documents when the need arises in the ordinary course of business; and 5) [the] subsidiary was marketer and servicer of parent's product []in the United States. *Camden Iron & Metal, Inc. v. Marubeni America Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991).[3,4]

Here, HyperBranch operates as a subsidiary of Stryker. HyperBranch likely has access to relevant documents in the ordinary course of business. HyperBranch is the marketer and servicer of what are now Stryker's products in the U.S.[5] At least three of the five alternative grounds for control are met by HyperBranch's relationship with Stryker. *See e.g., Gerling Int'l Ins. Co. v. C.I.R.*, 839 F.2d 131, 141 (3d Cir. 1988) ("Where the relationship is thus such that the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and documents helpful for use in the litigation, the courts will not permit the agent-subsidiary to deny control for purposes of discovery by an opposing party."); *Robert Bosch LLC v. Snap-On Inc.*, No. 12-11503, 2013 WL 823330, at *3 (E.D. Mich. Mar. 6, 2013) ("'[P]rovid[ing] highly relevant documents in litigation' constitutes a 'business need.'") (quoting *Camden*, 138 F.R.D. at 444); *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 129–32 (D. Del. 1986) (granting plaintiff's motion to compel defendant to produce documents within the possession of a nonparty parent corporation in part because the subsidiary operated as exclusive seller of the parent's products in the United States and could reach the requested documents).

For at least the above reasons, Plaintiffs believe the Court should compel HyperBranch to 1) answer the RFAs; 2) conduct the appropriate search "sales w/in 10 of Adherus"; and 3) produce relevant documents in the control of Mr. Stiles from Stryker.

Respectfully submitted,

*/s/ Karen L. Pascale*

Karen L. Pascale (#2903)

cc:   Clerk of Court (by hand, with exhibits)
      Counsel of Record (by email, with exhibits)

---

[3] The Court explained that "[t]he starting point of our analysis of the control issue is the language of Rule 34 itself. Rule 34(a) provides that a party may serve a request for production of documents that are 'in the possession, custody or control of the party upon whom the request is served.' Fed.R.Civ.P. 34(a)." *Camden Iron*, 138 F.R.D. at 441.

[4] "Rule 34(a) does not require plaintiff to demonstrate an alter ego relationship in order to show that a litigant 'controls' documents or things that are possessed by a parent corporation with respect to a specific transaction involving parent and subsidiary." *Id.* at 442.

[5] For example, entering www.hyperbranch.com in a web browser automatically defaults to the Stryker website page https://cmf.stryker.com/products/adherus.