# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Jeremy A. Tigan
302 351 9106
jtigan@mnat.com

January 29, 2019

The Honorable Christopher J. Burke                             *VIA ELECTRONIC FILING*
United States District Court
  for the District of Delaware
844 North King Street
Wilmington, DE 19801

      Re:    *Confluent Surgical, Inc., et al. v. HyperBranch Medical Technology, Inc.*,
              C.A. No. 17-688 (LPS)(CJB)

Dear Judge Burke:

      HyperBranch submits this response to Plaintiffs' letter asking the Court to compel discovery related to: (1) certain of Plaintiffs' requests for admission (RFAs); (2) a dispute regarding one ESI email search term; and (3) a dispute concerning the propriety of Plaintiffs' proposed identification of a high-ranking executive of a non-party as an email custodian. For the reasons set forth below, HyperBranch respectfully requests that Plaintiffs' requested relief be denied.

*Plaintiffs' improper RFAs seeking multiple factual admissions*
*through the definition of "HyperBranch Products"*

      The Scheduling Order in this case places limits on discovery, including that "[a] maximum of 50 requests for admission are permitted for each side." (D.I. 30 at ¶ 8(c).) Despite this straightforward limit, Plaintiffs served HyperBranch with <u>63</u> numbered RFAs, many of which are compound and seek admissions regarding multiple, different accused products (*See* Plaintiffs' Opening Letter (D.I. 146), Ex. D (Plaintiffs' First Set of RFAs (Nos. 1-63)).) HyperBranch objected to Plaintiffs' attempt to circumvent the discovery limits as follows:

> HyperBranch likewise objects to the term "HyperBranch Products" as defined by Plaintiffs as vague and overbroad in that it refers to multiple different products which makes each request for admission using that term improper, as the request is no longer directed to a singular request, but is instead improperly directed to multiple requests. HyperBranch further objects to the extent that the subject

The Honorable Christopher J. Burke
January 29, 2019
Page 2

>matter of the request requires HyperBranch to respond such that the material differences between the HyperBranch products would constitute multiple requests.

(*See, e.g.*, Ex. A to Plaintiffs' Opening Letter at 6.)

Plaintiffs' RFAs are not limited to single factual admissions but are instead directed to multiple factual inquiries—e.g., admissions related to different products, each having different instructions for use, different dates of regulatory approval, different dates and scope of sales, and different material features. Indeed, the factual distinctions among the "Accused Products"—and the improper ambiguity associated with Plaintiffs' multi-product definition of "HyperBranch Products"—have been amplified by the addition to this case of two more distinct HyperBranch products (Adherus Manual and the ET Baffle-2 Configuration). (*See* D.I. 137, ¶¶ 6-54.)

Plaintiffs' opening letter does not dispute that their definition of "HyperBranch Products" refers to multiple different products, but instead incorrectly seeks to circularly recast their own definition as encompassing just a "single Product Class." (*See* Plaintiffs' Opening Letter at 1 ("the term 'HyperBranch Products' is a single Product Class ***per the definition set forth in Plaintiffs' Requests for Admission*** . . . ") (emphasis added.) This is sheer sophistry. Plaintiffs provide no evidence that HyperBranch's different products are ever treated as a single product class in the same way that Micromedics defined its products within distinct product classes (and as HyperBranch likewise defined each individual product class as part of its RFAs). Plaintiffs' argument thus takes an inapt and circular form-over-substance approach, under which *any* *definition* of numerous, multiple different products under a single moniker of "Defendant Products" would always constitute a "single product class." Plaintiffs have failed to present RFAs that are "simple and direct, and 'limited to singular relevant facts,'" *see Integra LifeSciences Corp. v. HyperBranch Med. Tech., Inc.*, C.A. No. 15-819-LPS-CJB, D.I. 343 at 8 (D. Del. Sept. 27, 2017) (citing *Bovarie v. Schwarzenegger*, C.A. No. 08cv1661 LAB (NLS), 2011 WL 719206, at *6 (S.D. Cal. Feb. 22, 2011)), and their attempt to make an end run around the Court's limit on RFAs in this case should be rejected.

Finally, Plaintiffs' apparent reliance on responses to RFAs from the Round 1 case is misplaced and, if anything, demonstrates that Plaintiffs' multiple product definition is improper.[1] Plaintiffs fail to acknowledge the material differences between their requests in the Round 1 case and here. Specifically, in the Round 1 case, Plaintiffs recognized the differences between the various different HyperBranch Products because they drafted requests for *each* individual product—*i.e.*, the requests sought admissions directed to the "Adherus AutoSpray Dural Sealant" product, the "Adherus [Manual] Dural Sealant" product, and the "Adherus Spinal Sealant" product separately and distinctly as opposed to collectively referring to them as the "HyperBranch Products." (*Compare* Ex. E to Plaintiffs' Opening letter RFA Nos. 2, 13, 17 *with* Ex. D RFA Nos. 2, 3.)

---

[1] It is black-letter law that a response "under [Rule 36] is not an admission for any other purpose and cannot be used against the party in any other proceeding." *See* Fed. R. Civ. P. 36(b).

The Honorable Christopher J. Burke
January 29, 2019
Page 3

*Plaintiffs' overbroad and unduly burdensome search term*

HyperBranch has already produced several hundred thousand pages of documents for the purposes of this case, including thousands of emails. HyperBranch has performed targeted collections of non-email documents in response to Plaintiffs' production requests and, consequently, has relied on search terms solely for the production of email. HyperBranch has worked with and accepted various search terms proposed by Plaintiffs for the production of additional emails for this Round 2 case, and has reached agreement to utilize 38 multifaceted terms. The only dispute concerns a single overbroad and unduly burdensome search term that is not proportional to the needs of the case. (*See* Plaintiffs' Opening Letter, Ex. G.)

As noted in the parties' correspondence (*see id.*), HyperBranch has repeatedly provided Plaintiffs with summary tables disclosing the domestic and foreign sales of the Accused Products itemized on a quarterly basis, which obviates the need to produce duplicative reams of emails related to the sales data. Nevertheless, without explaining why the produced sales summaries are insufficient, Plaintiffs seek to force HyperBranch to use the search term "adherus w/10 sales*" to capture the underlying sales information from within emails. In an effort to seek a compromise, HyperBranch proposed the term "adherus w/2 sales." Although the distinction between these two terms may appear minor, the difference in the number of documents retrieved and the commensurate burden to review the resulting documents are tremendous, and Plaintiffs have identified no material need for such documents to balance that undue burden.

Morever, Plaintiffs already have in their possession several thousand emails hit by their proposed term "adherus w/10 sales". Yet not a single one of these documents was used by Plaintiffs at trial in the Round 1 case—though, of course, Plaintiffs relied extensively on the summary sales data. Put simply, Plaintiffs have not identified a single document among the thousands of emails in their possession encompassed by their proposed search term that is material to any issues in the case and that would not otherwise be captured in the summary data or by HyperBranch's narrower proposed search term. Rather, Plaintiffs can posit only *hypothetical* documents that refer to "sales of the Adherus products" or that have the title "Adherus AutoSpray Third Quarter 2018 Sales." (Plaintiffs' Opening Ltr. at 3.) But, such sales information is already included in the summary sales information produced by HyperBranch.

Plaintiffs contend that "it is difficult to understand how an additional alleged 12,000 documents . . . is now unduly burdensome." (*Id.*) Considering that a document reviewer can review approximately 500 documents per day, the burden associated with the additional 12,000 documents is about 24 days of FTE review, which in the absence of a single material document identified by Plaintiffs demonstrates that such a review would be unduly burdensome and unwarranted. Nevertheless, HyperBranch further attempted to reach agreement on this dispute by asking Plaintiffs if they would agree to pay for the review of the 12,000 additional documents. Plaintiffs refused. Accordingly, the Court should deny Plaintiffs' request to use the unduly burdensome sales term ("adherus w/10 sales") as part of the production of email by HyperBranch in this case, or alternatively order cost-shifting associated with the review of documents retrieved by Plaintiffs' proposed term.

*Plaintiffs' request for a high-ranking non-party executive's emails*

At the time this lawsuit was filed, HyperBranch had approximately 20 employees, many

The Honorable Christopher J. Burke
January 29, 2019
Page 4

of whom worked in production and shipping. As part of the production of email for this case, HyperBranch identified essentially all of its employees with active HyperBranch email accounts as custodians. This included HyperBranch's CEO and President Jeff Clark, Michael Carnahan (Vice President of Research and Development), Keith D'Alessio (Vice President of Operations and Engineering), and Stuart Rogers (Vice President of Global Sales and Marketing). Each of the foregoing individuals was employed by HyperBranch for many years; Mr. Clark, Dr. Carnahan, and Mr. D'Alessio were each employed by HyperBranch since at least 2005. Accordingly, HyperBranch's identification of custodians for the production of email included everyone at HyperBranch who has had an ongoing and longstanding role in the development and commercialization of the Accused Products.

On October 1, 2018, HyperBranch was acquired by and began operating as a subsidiary of Stryker Corporation ("Stryker"). Based on this recent change in ownership, Plaintiffs now contend that a Stryker group president, either Mr. Spencer Stiles or the "appropriate Group President," should be a court-ordered mandatory custodian for the production of email in this case. (*See* Plaintiffs' Opening Ltr. at 3, n.2.) As a preliminary matter, Mr. Stiles is not the executive of the Stryker business-line that directly manages the HyperBranch entity and, as such, he is not an appropriate custodian for the purposes of searching email in this case.

In addition, Plaintiffs have made no showing that HyperBranch has "control" over the emails of any high-ranking *non-party* Stryker executives—either prior to or after the acquisition. "[O]ur Court has found that documents are in the 'control' of a litigating party if that party has the 'legal right to obtain the documents required on demand' from the non-party corporation." *Princeton Dig. Image Corp. v. Konami Dig. Entm't Inc.*, 316 F.R.D. 89, 90 (D. Del. 2016). Indeed, emails are not the sort of business documents that are commonly shared "on demand" between parent corporation Presidents and their subsidiaries for purposes of satisfying the subsidiary's "business needs" or the type of documents shared between a parent and subsidiary as part of the "ordinary course of business." Plaintiffs have therefore failed to carry their necessary burden of demonstrating that HyperBranch has the right to obtain the emails of high-ranking Stryker executives—a prerequisite to Plaintiffs' requested discovery. *See Princeton Dig. Image Corp.*, 316 F.R.D. at 90 ("The party seeking production of documents bears the burden of establishing the opposing party's control over those documents.").

Nor have Plaintiffs justified designating anyone affiliated with non-party Stryker—let alone a particular "Group President"—as a custodian in this case. Plaintiffs merely state that a Group President "would have likely received **at the time of the acquisition** . . . relevant information as to the historical, current, and projected manufacture and sales of the accused products." (*Id.* at 3.) But, Plaintiffs already have voluminous HyperBranch non-email documents related to sales (past, present, and projected) in their possession that were produced in both the Round 1 case and this case. Plaintiffs have not indicated why or how the various documents already produced are in any way insufficient, nor have they identified any categories of additional relevant documents that would be in the possession of a Stryker "Group President" but not HyperBranch's legacy employees, whose documents were searched in the Round 1 litigation and who are listed as custodians for the production of email in this case.

Accordingly, the Court should deny Plaintiffs' request to include Mr. Stiles or another "Group President" as an email custodian for the production of email in this Round 2 case.

The Honorable Christopher J. Burke
January 29, 2019
Page 5

                            Respectfully,

                            */s/ Jeremy A. Tigan*

                            Jeremy A. Tigan (#5239)

JAT/rs
cc:    Clerk of the Court (by hand delivery)
        All Counsel of Record (by CM/ECF and email)