# Exhibit A

| From: | Tim Meece |
|---|---|
| Sent: | Friday, May 31, 2019 9:49 AM |
| To: | 'Pivovar, Adam'; 'Graves, Jon'; Christopher Roth; Jason Shull; IntegravHyperBranch |
| Cc: | 'Pascale, Karen (kpascale@ycst.com)'; 'Vrana, Robert'; 'tgrimm@mnat.com'; 'jtigan@mnat.com'; 'z/HyperBranch-Integra' |
| Subject: | RE: Confluent and Integra v. HyperBranch; C.A. No. 17-688-LPS-CJB; |
| Attachments: | DRAFT Discovery Dispute Letter 05-31-2019.DOCX |

Adam,

In the spirit of compromise, Integra planned to convey in its letter that it would decrease its count of discrete subparts of interrogatories under Rule 33(a)(1) and was proposing that the parties exchange their respective counts to try to see if they could narrow their dispute. However, your correspondence makes clear that HyperBranch baselessly contends that its Interrogatory Nos. 1-15 only count as a total of "15" under Rule 33(a)(1), despite the fact that the interrogatories contain multiple discrete subparts independently seeking, *inter alia*, facts, persons, and documents, and to quote you, "frankly, you know it." Since HyperBranch believes that its count of interrogatories literally corresponds to its numbering of them, we agree that the dispute is ripe for Court adjudication and that further discussions are unnecessary.

To make sure that the parties are briefing the same issues with respect to Rule 33(a)(1), and consistent with Integra's effort to narrow the dispute, please note that Integra is counting Interrogatory Nos. 1-15 as having thirty-seven discrete subparts. Integra agrees that Interrogatory Nos. 7-12 count as one interrogatory each. Integra's position is that Interrogatory Nos. 1-6 and 13-15 contain multiple discrete subparts totaling thirty-one. Integra stands on its other objections as well.

Per your request, the attached discovery dispute letter includes Integra's edits.

Regards,


**TIMOTHY C. MEECE | ATTORNEY**

**BANNER WITCOFF**
TEL: 312.463.5420 | MAIN: 312.463.5000
bannerwitcoff.com | patent-litigation.com | tmeece@bannerwitcoff.com

**PROTECTING IP. PROPELLING BUSINESS.**

IMPORTANT/CONFIDENTIAL: This message may be privileged, confidential, or exempt from disclosure under applicable law. If you have received this communication in error, please notify us immediately by return e-mail.

---

**From:** Pivovar, Adam <apivovar@cooley.com>
**Sent:** Thursday, May 30, 2019 3:24 PM
**To:** Tim Meece <TMeece@bannerwitcoff.com>; Graves, Jon <jgraves@cooley.com>; Christopher Roth <Croth@bannerwitcoff.com>; Jason Shull <JShull@bannerwitcoff.com>; IntegravHyperBranch <IntegravHyperBranch@bannerwitcoff.com>
**Cc:** Pascale, Karen (kpascale@ycst.com) <kpascale@ycst.com>; Vrana, Robert <RVrana@ycst.com>; tgrimm@mnat.com; jtigan@mnat.com; z/HyperBranch-Integra <zHyperBranchIntegra@cooley.com>
**Subject:** RE: Confluent and Integra v. HyperBranch; C.A. No. 17-688-LPS-CJB;

Tim,

Below, counsel for Plaintiffs stated: "Our position has already been set forth in Integra's letter on the recent discovery dispute regarding interrogatory 14."  It is therefore unclear to us why you believe that an additional letter from Plaintiffs setting forth their position is necessary.  That said, if you would like to send us "a detailed articulation" of [Plaintiffs'] counting" methodology, we'd be happy to consider it.  But it is clear from the parties' prior correspondence and today's meet and confer call that there is currently a ripe dispute to be presented the Court.  We asked today if you were going to agree to provide responses by the end of next week, and you refused.  Accordingly, please send us any edits you have to the attached discovery dispute letter by noon tomorrow so that we can get it on file.

Thanks,
Adam

**Adam M. Pivovar, Ph.D.**
Cooley LLP
1299 Pennsylvania Avenue, NW • Suite 700
(enter from 12th and E Streets)
Washington, DC  20004-2400
Direct: (202) 842 7889 • Fax: (202) 842 7899 • Cell: (301) 518 9212
Bio: www.cooley.com/apivovar • Practice: www.cooley.com/litigation

**From:** Tim Meece <TMeece@bannerwitcoff.com>
**Sent:** Thursday, May 30, 2019 2:08 PM
**To:** Pivovar, Adam <apivovar@cooley.com>; Graves, Jon <jgraves@cooley.com>; Christopher Roth <Croth@bannerwitcoff.com>; Jason Shull <JShull@bannerwitcoff.com>; IntegravHyperBranch <IntegravHyperBranch@bannerwitcoff.com>
**Cc:** Pascale, Karen (kpascale@ycst.com) <kpascale@ycst.com>; Vrana, Robert <RVrana@ycst.com>; tgrimm@mnat.com; jtigan@mnat.com; z/HyperBranch-Integra <zHyperBranchIntegra@cooley.com>
**Subject:** RE: Confluent and Integra v. HyperBranch; C.A. No. 17-688-LPS-CJB;

Adam, we vehemently disagree with your email and we are not interested in trading emails on this.  ==We offered to provide HyperBranch with a detailed articulation of our counting of interrogatories in order to help facilitate a meet and confer.  You declined and insisted on conducting the meet and confer today regarding the interrogatories.==  We will address all of our objections, including the count of interrogatory subparts, in our letter to the Court.  Tim

**TIMOTHY C. MEECE | ATTORNEY**

**BANNER WITCOFF**
TEL: 312.463.5420 | MAIN: 312.463.5000
bannerwitcoff.com | patent-litigation.com | tmeece@bannerwitcoff.com

**PROTECTING IP. PROPELLING BUSINESS.**

IMPORTANT/CONFIDENTIAL: This message may be privileged, confidential, or exempt from disclosure under applicable law. If you have received this communication in error, please notify us immediately by return e-mail.

**From:** Pivovar, Adam <apivovar@cooley.com>
**Sent:** Thursday, May 30, 2019 11:50 AM
**To:** Tim Meece <TMeece@bannerwitcoff.com>; Graves, Jon <jgraves@cooley.com>; Christopher Roth <Croth@bannerwitcoff.com>; Jason Shull <JShull@bannerwitcoff.com>; IntegravHyperBranch <IntegravHyperBranch@bannerwitcoff.com>
**Cc:** Pascale, Karen (kpascale@ycst.com) <kpascale@ycst.com>; Vrana, Robert <RVrana@ycst.com>; tgrimm@mnat.com; jtigan@mnat.com; z/HyperBranch-Integra <zHyperBranchIntegra@cooley.com>
**Subject:** RE: Confluent and Integra v. HyperBranch; C.A. No. 17-688-LPS-CJB;

Tim,

No need for further games.  We've served 18 interrogatories.  You have no good faith basis for refusing to answer Interrogatory Nos. 16-18 and, frankly, you know it.  You can try to justify your attempt to duck answering these critical interrogatories on the purported ground that HyperBranch has served over 350 interrogatories to Judge Burke.  As we previously stated, the meet-and-confer on this issue should be short unless Plaintiffs are willing to admit that the objections and failure to provide any substantive responses to these interrogatories was not in good faith.

Thanks,
Adam

**Adam M. Pivovar, Ph.D.**
Cooley LLP
1299 Pennsylvania Avenue, NW • Suite 700
(enter from 12th and E Streets)
Washington, DC  20004-2400
Direct: (202) 842 7889 • Fax: (202) 842 7899 • Cell: (301) 518 9212
Bio: www.cooley.com/apivovar • Practice: www.cooley.com/litigation

---

**From:** Tim Meece <TMeece@bannerwitcoff.com>
**Sent:** Thursday, May 30, 2019 11:07 AM
**To:** Pivovar, Adam <apivovar@cooley.com>; Graves, Jon <jgraves@cooley.com>; Christopher Roth <Croth@bannerwitcoff.com>; Jason Shull <JShull@bannerwitcoff.com>; IntegravHyperBranch <IntegravHyperBranch@bannerwitcoff.com>
**Cc:** Pascale, Karen (kpascale@ycst.com) <kpascale@ycst.com>; Vrana, Robert <RVrana@ycst.com>; tgrimm@mnat.com; jtigan@mnat.com; z/HyperBranch-Integra <zHyperBranchIntegra@cooley.com>
**Subject:** RE: Confluent and Integra v. HyperBranch; C.A. No. 17-688-LPS-CJB;

Adam, is HyperBranch's position that Interrogatory Nos. 1-15 total 18 discrete subparts under Rule 33?  If so, which interrogatory are you counting as having multiple distinct parts?  Tim

**TIMOTHY C. MEECE | ATTORNEY**

**BANNER WITCOFF**
TEL: 312.463.5420 | MAIN: 312.463.5000
bannerwitcoff.com | patent-litigation.com | tmeece@bannerwitcoff.com

**PROTECTING IP. PROPELLING BUSINESS.**

IMPORTANT/CONFIDENTIAL: This message may be privileged, confidential, or exempt from disclosure under applicable law. If you have received this communication in error, please notify us immediately by return e-mail.

---

**From:** Tim Meece <TMeece@bannerwitcoff.com>
**Sent:** Wednesday, May 29, 2019 4:01 PM
**To:** 'Pivovar, Adam' <apivovar@cooley.com>; Graves, Jon <jgraves@cooley.com>; Christopher Roth <Croth@bannerwitcoff.com>; Jason Shull <JShull@bannerwitcoff.com>; IntegravHyperBranch <IntegravHyperBranch@bannerwitcoff.com>
**Cc:** Pascale, Karen (kpascale@ycst.com) <kpascale@ycst.com>; Vrana, Robert <RVrana@ycst.com>; tgrimm@mnat.com; jtigan@mnat.com; z/HyperBranch-Integra <zHyperBranchIntegra@cooley.com>
**Subject:** RE: Confluent and Integra v. HyperBranch; C.A. No. 17-688-LPS-CJB;

Adam,

In order to help facilitate the meet & confer, we are preparing a detailed letter explaining our count of interrogatories.  This threshold issue should be dispositive of the matter.  We expect to finish the letter hopefully by tomorrow.  We should hold off on the meet & confer until after you have had a chance to consider Integra's position.

Best regards,
Tim

**TIMOTHY C. MEECE | ATTORNEY**

**BANNER WITCOFF**
TEL: 312.463.5420 | MAIN: 312.463.5000
bannerwitcoff.com | patent-litigation.com | tmeece@bannerwitcoff.com

**PROTECTING IP. PROPELLING BUSINESS.**

IMPORTANT/CONFIDENTIAL: This message may be privileged, confidential, or exempt from disclosure under applicable law. If you have received this communication in error, please notify us immediately by return e-mail.

**From:** Pivovar, Adam <apivovar@cooley.com>
**Sent:** Wednesday, May 29, 2019 3:30 PM
**To:** Graves, Jon <jgraves@cooley.com>; Christopher Roth <Croth@bannerwitcoff.com>; Tim Meece <TMeece@bannerwitcoff.com>; Jason Shull <JShull@bannerwitcoff.com>; IntegravHyperBranch <IntegravHyperBranch@bannerwitcoff.com>
**Cc:** Pascale, Karen (kpascale@ycst.com) <kpascale@ycst.com>; Vrana, Robert <RVrana@ycst.com>; tgrimm@mnat.com; jtigan@mnat.com; z/HyperBranch-Integra <zHyperBranchIntegra@cooley.com>
**Subject:** RE: Confluent and Integra v. HyperBranch; C.A. No. 17-688-LPS-CJB;

Counsel,

We should plan to hold the meet-and-confer on Plaintiffs' interrogatory responses immediately after the meet-and-confer with Medtronic tomorrow.  If Plaintiffs truly believe their responses can be justified and are going to stand behind them, then the meet-and-confer on this issue will be short.

Regards,
Adam

**Adam M. Pivovar, Ph.D.**
Cooley LLP
1299 Pennsylvania Avenue, NW • Suite 700
(enter from 12th and E Streets)
Washington, DC  20004-2400
Direct: (202) 842 7889 • Fax: (202) 842 7899 • Cell: (301) 518 9212
Bio: www.cooley.com/apivovar • Practice: www.cooley.com/litigation

**From:** Graves, Jon <jgraves@cooley.com>
**Sent:** Tuesday, May 28, 2019 3:21 PM
**To:** Christopher Roth <Croth@bannerwitcoff.com>; Pivovar, Adam <apivovar@cooley.com>; Tim Meece <TMeece@bannerwitcoff.com>; Jason Shull <JShull@bannerwitcoff.com>; IntegravHyperBranch <IntegravHyperBranch@bannerwitcoff.com>
**Cc:** Pascale, Karen (kpascale@ycst.com) <kpascale@ycst.com>; Vrana, Robert <RVrana@ycst.com>; tgrimm@mnat.com; jtigan@mnat.com; z/HyperBranch-Integra <zHyperBranchIntegra@cooley.com>
**Subject:** RE: Confluent and Integra v. HyperBranch; C.A. No. 17-688-LPS-CJB;

Counsel,

The basis for the requested meet and confer is that the interrogatories seek relevant information, and Plaintiffs' refusal to answer them is unjustified.  Our count is 18.

Again, we ask for your availability for a call tomorrow and Thursday.

**Jonathan G. Graves**
Partner
Cooley LLP ♦ One Freedom Square ♦ Reston Town Center
11951 Freedom Drive ♦ Reston, VA  20190-5656
Direct: 703-456-8119 ♦ Fax: 703-456-8100 ♦ Cell: 703-447-3639
Bio: www.cooley.com/jgraves ♦ Practice: IP Litigation www.cooley.com/litigation

---

**From:** Christopher Roth <Croth@bannerwitcoff.com>
**Sent:** Tuesday, May 28, 2019 1:38 PM
**To:** Pivovar, Adam <apivovar@cooley.com>; Tim Meece <TMeece@bannerwitcoff.com>; Jason Shull
<JShull@bannerwitcoff.com>; IntegravHyperBranch <IntegravHyperBranch@bannerwitcoff.com>
**Cc:** Pascale, Karen (kpascale@ycst.com) <kpascale@ycst.com>; Vrana, Robert <RVrana@ycst.com>; tgrimm@mnat.com;
jtigan@mnat.com; z/HyperBranch-Integra <zHyperBranchIntegra@cooley.com>
**Subject:** RE: Confluent and Integra v. HyperBranch; C.A. No. 17-688-LPS-CJB;

Counsel,

Before we investigate schedules for a conference call, would you please explain the basis for your request?  HyperBranch is clearly over the interrogatory limit.  If you disagree, please identify your count of parts and subparts. We do not understand what there is to discuss.  Our position has already been set forth in Integra's letter on the recent discovery dispute regarding interrogatory 14.

Regards,


**CHRISTOPHER B. ROTH | ATTORNEY**

**BANNER WITCOFF**
TEL: 202.824.3113 | MAIN: 202.824.3000
bannerwitcoff.com | croth@bannerwitcoff.com

**PROTECTING IP. PROPELLING BUSINESS.**

IMPORTANT/CONFIDENTIAL: This message may be privileged, confidential, or exempt from disclosure under applicable law. If you have received this communication in error, please notify us immediately by return e-mail.

**From:** Pivovar, Adam [mailto:apivovar@cooley.com]
**Sent:** Friday, May 24, 2019 3:25 PM
**To:** Tim Meece <TMeece@bannerwitcoff.com>; Christopher Roth <Croth@bannerwitcoff.com>; Jason Shull
<JShull@bannerwitcoff.com>; IntegravHyperBranch <IntegravHyperBranch@bannerwitcoff.com>
**Cc:** Pascale, Karen (kpascale@ycst.com) <kpascale@ycst.com>; Vrana, Robert <RVrana@ycst.com>; tgrimm@mnat.com;
jtigan@mnat.com; z/HyperBranch-Integra <zHyperBranchIntegra@cooley.com>
**Subject:** FW: Confluent and Integra v. HyperBranch; C.A. No. 17-688-LPS-CJB;

Counsel,

Please provide your availability for a meet-and-confer next week Wednesday or Thursday of next week (5/29 and 5/30) to discuss Plaintiffs' failure to provide substantive responses to HyperBranch's Interrogatories Nos. 16-18.

Regards,

Adam

**Adam M. Pivovar, Ph.D.**
Cooley LLP
1299 Pennsylvania Avenue, NW • Suite 700
(enter from 12th and E Streets)
Washington, DC  20004-2400
Direct: (202) 842 7889 • Fax: (202) 842 7899 • Cell: (301) 518 9212
Bio: www.cooley.com/apivovar • Practice: www.cooley.com/litigation

---

**From:** Hanick, Linda <lhanick@ycst.com>
**Sent:** Friday, May 24, 2019 3:12 PM
**To:** z/HyperBranch-Integra <zHyperBranchIntegra@cooley.com>; Grimm, Thomas <tgrimm@mnat.com>; Kraftschik, Stephen <skraftschik@mnat.com>; Tigan, Jeremy <jtigan@mnat.com>
**Cc:** Pascale, Karen <kpascale@ycst.com>; Vrana, Robert <RVrana@ycst.com>
**Subject:** Confluent and Integra v. HyperBranch; C.A. No. 17-688-LPS-CJB;

Attached please find service copies of:

1) *Plaintiffs' Objections and Responses to Defendant's Fourth Set of Interrogatories (Nos. 16-18);* **and**
2) *Notice of Service*



**Linda K. Hanick, Paralegal**
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
P  302.571.6754     F  302.576.3415
lhanick@ycst.com | www.youngconaway.com

This message may contain confidential attorney-client communications or other protected information. If you believe you are not an intended recipient (even if this message was sent to your e-mail address), you may not use, copy, or retransmit it. If you believe you received this message by mistake, please notify us by return e-mail, and then delete this message. Thank you for your cooperation.

---

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

---

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

---

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

---

# Exhibit B

1

```
1              IN THE UNITED STATES DISTRICT COURT

2              IN AND FOR THE DISTRICT OF DELAWARE

3                         - - -

4
     ANSELL HEALTHCARE PRODUCTS   :   CIVIL ACTION
5    LLC,                         :
                                  :
6              Plaintiff,         :
                                  :
7        vs.                      :
                                  :
8    RECKITT BENCKISER LLC,       :
                                  :
9              Defendant.   :   NO. 15-00915-RGA

10
                              - - -
11
                         Wilmington, Delaware
12                       Friday, October 14, 2016
                         2:37 o'clock, p.m.
13
                              - - -
14
     BEFORE:  HONORABLE RICHARD G. ANDREWS, U.S.D.C.J.
15
                              - - -
16
     APPEARANCES:
17
                 MORGAN, LEWIS & BOCKIUS LLP
18               BY:  COLM F. CONNOLLY, ESQ.

19
                         -and-
20

21

22

23

24                                  Valerie J. Gunning
                                    Official Court Reporter
25
```

2

1    APPEARANCES (Continued):

2

3         MORGAN, LEWIS & BOCKIUS LLP
          BY:  THOMAS B. KENWORTHY, ESQ.

4             (Philadelphia, Pennsylvania)

5         Counsel for Plaintiff

6

7         YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

8         BY:  PILAR G. KRAMAN, ESQ.

9             -and-

10

11        BARLAY DAMON LLP
          BY:  DOUGLAS J. NASH, ESQ.

12            (Syracuse, New York)

13

14        Counsel for Defendant

15        - - -

16

17

18
19
20
21
22
23
24
25

---

3

1          P R O C E E D I N G S

2

3          (REPORTER'S NOTE:  The following conference was

4    held in chambers, beginning at 2:37 p.m.)

5

6          THE COURT:  All right.  Good afternoon.  Please

7    be seated.

8          This is Ansell versus Reckitt Benckiser.

9    Mr. Connolly?

10         MR. CONNOLLY:  Good afternoon, your Honor.  Colm

11   Connolly on behalf of the plaintiff, and I'm joined by my

12   partner, who will be the arguing, Thomas Kenworthy.

13         THE COURT:  All right.  Good afternoon, Mr.

14   Kenworthy.

15         Ms. Kraman?

16         MS. KRAMAN:  Good afternoon, your Honor.  Pilar

17   Kraman for Reckitt, and with me is Doug Nash.

18         MR. NASH:  Hello, your Honor.

19         THE COURT:  Good afternoon.

20         All right.  So I sent out, because I looked at

21   this, and these, counting interrogatory subparts, I just

22   wanted to explain to you how I got to 19.  Essentially,

23   there's a case which is not one of the ones you cite, but

24   happened to be the one that I like, called Banks vs. Office

25   of Senate Sergeant at Arms, which is 222 F.R.D. 7, District

---

4

1    of Columbia from 2004.

2          And basically the Judge there, who is fairly

3    well-known in the discovery circles, says something like, a

4    demand for information about a certain event and the

5    documents about it should be counted as two separate

6    interrogatories.  And so for a number of the interrogatories

7    where the defendant has asked for documents to support it,

8    I've counted that as two.  And I also thought that the

9    five photographs, I thought that was essentially asking the

10   same thing about five photographs, and I counted that as

11   one.

12         And let me see.  Well, the only other thing I

13   will say is, in regards to Interrogatory Number 1, when I

14   looked at that, I thought that was 4.  And the way I got

15   there was, and I thought subparts 1 through 6.  And I have

16   to say that I thought subpart four was meaningless.

17         But subparts 1 through 6 basically are one idea,

18   what's the priority date and why?

19         Subpart 7 is asking for the documents.

20         Subpart 8 identified a specific portion of the

21   asserted claims attributed by each named inventor.  That's

22   not the priority date as far as I'm concerned.  That's

23   something else.

24         Subpart 9, identify the contribution of all

25   individuals who are not named inventors in the conception,

---

5

1    reduction to practice of the subject matter of the

2    patents-in-suit.  I didn't think that was about the priority

3    date either.

4          So that's how I got to 19.  So the reason -- but

5    then there were some other objections that were made by

6    Ansell, and one or two of them I actually had a question

7    about.

8          All right.  So part of the objections were that

9    subparts 8 and 9 of Interrogatory Number 1 are, quote, "

10   "incredibly burdensome and a useless task of identifying all

11   the contributions of individuals who are not named inventors

12   to the conception, reduction to practice of the subject

13   matter of the patents."

14         Have you actually looked into this?

15         MR. KENWORTHY:  No.  I mean, the contributions

16   of all individuals not named to the conception and reduction

17   to practice, I do know this was a process that took four

18   years or a number of years of different pieces, and the

19   number of people who would have been doing and contributing

20   as staff, as administrative -- I mean, this covers -- so I

21   have not obviously answered all of that.  But I know when

22   every time we're looking for information, if you look to all

23   of the people who have some role, which has, for one, it

24   gets to another issue as far as burden, it does not really

25   relate to anything.

---

6

1      THE COURT:  Well, I don't think that's what you
2  said in your -- well, you do say "not pertinent to any
3  defense."  Well, what about that?
4      MS. KRAMAN:  Well, it relates to the
5  inventorship issue, which is important if --
6      THE COURT:  And is the inventorship issue raised
7  as a defense?
8      MS. KRAMAN:  Well, what is raised as a defense
9  is invalidity and the priority date is important.  So the
10  reason why that relates to that is if they're claiming an
11  earlier priority date, then the filing, then that relates
12  directly to that.  That's what those subparts -- that's all
13  information that is pertinent should they identify a
14  priority date that's earlier than the filing date.
15      THE COURT:  So let's say they identified a
16  priority date that's a year earlier.  How does the work of
17  the lab technician, I don't know, doing something with the
18  product, which presumably has something to do with reducing
19  to practice, how is that at all relevant to anything?
20      MS. KRAMAN:  I'm not sure if let's say a year
21  earlier would necessarily, but there are some potential
22  concerns based on documents that they've produced.  It would
23  be more three or four years earlier about whether or not
24  they're going to be claiming.  We have some indication that
25  they might be contending an earlier priority date.

7

1      THE COURT:  All right.  So why don't we do this.
2  I'm not going to order them to answer subpart 8 and subpart
3  9 right now.  When you find out what that priority date is
4  that they are claiming and you get this other information,
5  both sides will be in a much better position to evaluate
6  whether this is actually a pointless exercise or something
7  that might actually have some importance.
8      MR. KENWORTHY:  I think, your Honor, to answer,
9  that will bear out, that there's probably not going to be
10  any dispute concerning -- I mean, I think it's likely that
11  we may not rely on anything other than the filing date.
12      THE COURT:  That will moot most of this
13  argument.
14      MR. KENWORTHY:  Yes.
15      THE COURT:  So, all right.  Well, in any event,
16  let's go on.
17      In regards to Interrogatories 5 and 6, it is
18  stated that they're premature, subject to be addressed in
19  answering expert reports not due for almost nine months.
20  And so hear the question is -- oh, and then there's the
21  quote, quote, "Especially when Reckitt Benckiser has not
22  complied with the Court's June 3, 2016 directive with
23  respect to the two pieces of prior art."
24      So leaving aside that last one for a minute, I
25  don't think that to say that it's premature and is a matter

8

1  for expert testimony is a good objection, and the reason why
2  is this.  At some point you all are going to be doing claim
3  construction, and it seems to be a fairly common thing that
4  based on positions people are taking about anticipatory art,
5  that people are saying the claims mean this, the claims mean
6  that.  And so I think that getting your opinions, your
7  contentions on this topic is actually something that needs
8  to be done before we get to claim construction.
9      MR. KENWORTHY:  Well, may I address that?  One,
10  today, we each exchanged our proposed constructions, what we
11  think needs to be done, and then we met and conferred, so
12  that's already kind of a separate scheduled process as far
13  as what claim construction is.
14      THE COURT:  Right.  And let me just interrupt
15  you, Mr. Kenworthy.  But I keep having cases where, when the
16  expert reports come in, the other side says, well, gee,
17  their expert's plain meaning is not actually the plain
18  meaning, it's something else.
19      MR. KENWORTHY:  Sure.
20      THE COURT:  And so that's the reason -- so
21  that's the reason why I don't think it's totally divorced
22  from the -- you know, it is a separate process from the
23  claim construction, but it's something where the claim
24  construction identification of terms and the like can often
25  be better informed by knowing what the parties' contentions

9

1  are.  That's the point that I was making.
2      MR. KENWORTHY:  I guess I would suggest it's
3  really the other way around.  Claim construction really
4  informs what your invalidity contentions are and your
5  infringement contentions, but a lot of what the contentions
6  are going to be developed by experts.  It's not like it's a
7  fact.  It's not like it's saying, it's really comparing
8  pieces of prior art to properly construed claims.  It's a
9  classic expert analysis.
10      But beyond that, because these are not just
11  general invalidity.  These are dealing with just
12  anticipation by two pieces of prior art.  These two pieces
13  of prior art, and particularly asking about inherency of
14  particular features in those two pieces of prior art.
15      I don't want to jump the gun in dealing with the
16  last part, but the last part of that, of the objection, is,
17  if your Honor will recall when we were here last time in
18  June, it dealt with the sufficiency of the initial claim
19  charts and the initial invalidity contentions.
20      THE COURT:  Right.  And so the second part, part
21  of the reason why I said setting that aside --
22      MR. KENWORTHY:  Okay.
23      THE COURT:  -- because I think that's a
24  different kind of objection and we can address that in a
25  minute.

10

1    MR. KENWORTHY: Okay.

2    THE COURT: And should.

3    MR. KENWORTHY: Okay.

4    THE COURT: Is there anything more you have to

5    say on the other topic?

6    MR. KENWORTHY: On the other topic, part of the

7    problem, particularly since it's not just a question of

8    experts and who is going to be able to respond to this.

9    When we served our objections, we extended the time for

10   them to amend their invalidity contentions to comply with

11   the Court's order, so we had not yet seen what their

12   purported compliance was when we responded.

13   Since that time they have provided what they've

14   called an addendum, and aside from we don't think it does

15   what the Court directed them to do, so it's hard for us to

16   counter what they have a burden of proof by clear and

17   convincing evidence have not shown. But beyond that, they

18   have marked a micrograph of what they claim is prior art

19   confidential, so we cannot show it to any technical person

20   in our client.

21   THE COURT: All right. I hear you.

22   Yes?

23   MS. KRAMAN: First, I just wanted to, regarding

24   these two, in particular, these two interrogatories, first I

25   want to note that they never objected in their interrogatory

11

1    responses. The objection that's in their letter was not in

2    their interrogatory responses.

3    So we contend that --

4    THE COURT: Well, hold on just a second. I'm

5    sure you're right. I just want to see. These are 6 and 7;

6    right?

7    MS. KRAMAN: 5 and 6. Prematurity was not an

8    objection.

9    THE COURT: Well, you know, when they also have

10   their general objection and specific objections --

11   MS. KRAMAN: The general objection was just to

12   numerosity.

13   THE COURT: Oh, okay. All right. Keep going.

14   MS. KRAMAN: So that's first.

15   Second, they have everything they need, and

16   as -- rebuttal contentions are common in this district, and

17   it's not, you know, you don't wait until expert discovery.

18   As we gave validity contentions, we should be

19   able to get rebuttal, rebuttal validity contentions in

20   response to our invalidity contentions. And the general

21   rule in this district is you get as good as you give.

22   When we served our initial invalidity

23   contentions before the June 3rd discovery hearing, we gave

24   them hundreds of pages of invalidity contentions. They have

25   our contentions. They're incredibly detailed. And I see

12

1    invalidity contentions all the time and they're one of the

2    best I've ever seen, and I think the Court would agree, and

3    they're on the docket.

4    I would -- they are on the docket at DI 66.

5    THE COURT: Were they submitted in connection

6    with --

7    MS. KRAMAN: They were submitted in connection

8    with our motion to extend the deadline to serve the

9    addendum, because you might recall, Ansell, we wanted an

10   extra couple of weeks because the testing was taking longer

11   to produce the images.

12   THE COURT: Okay.

13   MS. KRAMAN: And we needed a little bit of extra

14   time, and they refused to give us the extension unless we

15   agreed to stay the case, and we refused to do that, so we

16   had to file a motion. And then subsequently the parties

17   were able to agree to an extension and that resolved the

18   motion, but we attached them at DI 66, Exhibit A.

19   THE COURT: Okay. Would I have had to have a

20   really good memory to figure that out or could I have told

21   that from the letter you submitted --

22   MS. KRAMAN: I think -- well, we --

23   THE COURT: -- that they were DI 66?

24   MS. KRAMAN: In the first letter that we filed

25   last week, we cited to them.

13

1    THE COURT: Okay.

2    MS. KRAMAN: In the first letter.

3    THE COURT: And go back and read that.

4    MS. KRAMAN: Yes. We cited to them.

5    But regardless, incredibly detailed. And it's

6    important to note that the only thing on the table at the

7    June 3rd discovery conference was their deficient

8    infringement contentions. They have never raised a

9    discovery dispute over our invalidity contentions, and

10   Mr. Kenworthy at the hearing mentioned, well, if we have to

11   give our images, they have to, too. And Mr. Nash said, of

12   course, we will. And that's what the addendum was. But it

13   was just the images supporting our inherency arguments. But

14   they have our full contentions, hundreds of pages of claim

15   charts.

16   THE COURT: All right.

17   MS. KRAMAN: And we're only asking for their

18   validity contentions. As you, I'm sure, are aware,

19   oftentimes in a case you will serve an interrogatory that

20   asks for a party's entire validity contentions, for

21   everything. We're asking a much more narrow question in two

22   interrogatories. We're asking for their 102 rebuttal

23   contention as to one piece of prior art, and their 102

24   contention as to another. It's very narrow. They have

25   everything they need to answer it. The only thing that they

14

1   are waiting on is they've asked us to annotate a couple of
2   the images with arrows, which we agreed to do, and we're
3   happy to do that.  And if they need to supplement their
4   answer after they get the annotation, by all means, they can
5   do so.
6           THE COURT:  So, wait.  What are you annotating
7   these images with?
8           MS. KRAMAN:  With an arrow to point to --
9           THE COURT: Here's a vulcanization?
10          MS. KRAMAN:  Yes.
11          THE COURT:  Or here's whatever it is you're
12  talking about?
13          MS. KRAMAN:  Right.  Exactly.
14          THE COURT:  And when are you going to do that
15  by?
16          MS. KRAMAN:  I believe within a week or so.
17          MR. NASH:  We can do it by next week, your
18  Honor.  We had a deposition yesterday that was occupying
19  most of my time.  I am going to be the one that will
20  annotate it, so I will turn my attention to it on Monday.
21          THE COURT:  All right.
22          MR. NASH:  And I will get it out next week.
23          THE COURT:  And the reason why you are telling
24  me this is their responses on the anticipation are going to
25  be better informed if they have these annotations?

15

1           MS. KRAMAN:  I don't think so and we don't think
2   so.
3           THE COURT:  That's what they were saying.
4           MS. KRAMAN:  They are contending they can't
5   answer it without that annotation and that's just not the
6   case.
7           THE COURT:  Okay.  So Mr. Kenworthy mentioned
8   some micrograph that is supposedly attorneys' eyes only, or
9   some kind of confidential -- confidentiality designation
10  that they can't show anyone?
11          MS. KRAMAN:  It's designated confidential, which
12  I believe under the protective order, they can show.
13          MR. KENWORTHY:  The two lawyers.  They were not
14  technical.
15          MR. NASH:  Your Honor, let's me address this,
16  because Mr. Kenworthy and I had this conversation.
17          Ansell has produced just a ton of micrographs in
18  this case and most of them they've identified, they've
19  designated as highly confidential, attorneys' eyes only.
20  And when we served the interrogatories, I was worried that
21  they might want to show them to their client, so I didn't
22  actually go that far and designates them as attorneys' eyes
23  only.  I designated them as confidential.  The reason I did
24  is because one of the prior art references is made according
25  to one of our formulations.

16

1           THE COURT:  Wait a second.  Wait.  So Ansell,
2   which is not you, that's them.
3           MR. NASH:  That's them.
4           THE COURT:  They designated something as
5   confidential or highly confidential, but I have the
6   impression, unless I misunderstood, that Mr. Kenworthy is
7   saying something you've produced is what was causing a
8   problem.
9           MR. KENWORTHY:  Correct.
10          MR. NASH:  I acknowledge that.  To give you a
11  backdrop, they've treated these types of documents as highly
12  confidential.  We are treating them as confidential because
13  they reflect a formulation that my client owns, and --
14          THE COURT:  Yes.  I don't think we're really
15  arguing about what their designation should be.
16          MR. NASH:  Okay.
17          THE COURT:  I'm getting to just a specific
18  point, as Mr. Kenworthy said, that they couldn't consult
19  with experts because of the designation of some micrograph.
20  Do you know what micrograph he's talking about?
21          MR. NASH:  I do.
22          THE COURT:  And is he right?
23          MR. NASH:  No.  He can consult with any expert
24  he wants.  I think what he's complaining about is he can't
25  show it to the technical people within his client: But when

17

1   we met and conferred on this the second time, the first time
2   this was raised, and I said to him, tell me who you want to
3   show it to and without withdrawing the designation, because
4   I do think it's appropriate.  We'll consider that and most
5   likely allow it.  But he never then came back and said,
6   okay.  Here's who I want to show it to.
7           That's how the parties in this case have sort of
8   handled these types of confidentiality issues in the past,
9   where I need to show this to X person.  Can I, yes or no?
10  And then we end up either agreeing or not agreeing.  So I
11  was willing to make the accommodation.  He never availed
12  himself of it.
13          THE COURT:  All right.  And so I have not looked
14  at these hundreds of pages of invalidity contentions.  Are
15  there hundreds of pages of them?
16          MR. KENWORTHY:  Your Honor, there is a
17  substantial number, but that is not the issue.  The issue
18  is, is the issue of inherency, and inherency is only about
19  five pages.
20          When we go back to the June 3rd --
21          THE COURT:  Well, hold on a minute.
22          MR. KENWORTHY:  Okay.
23          THE COURT:  Is inherency really what we're
24  arguing about here?
25          MR. KENWORTHY:  Yes.

18

1    THE COURT: I understand they have not produced
2  anything, but is that what you are really trying to find out
3  about?
4    MR. NASH: That's the only thing they have not
5  produced that we said that would make it --
6    THE COURT: Well, I'm sorry, Mr. Kenworthy.
7  Wait.
8    So that's what you're arguing about is, their
9  contentions don't show an inherency argument?
10    MR. KENWORTHY: Right. What we dealt with
11  before, and we have not treated comparable things with any
12  confidentiality. We had to show the micrograph of their
13  product pointing to where the element was, and they insist
14  upon that. Your Honor thought it was appropriate and
15  ordered us.
16    We had before the hearing said, their argument
17  as to what we have to do is inconsistent with what they've
18  done, and at the argument your Honor said you would be
19  consistent and said, you have to do the same thing for your
20  invalidity.
21    THE COURT: All right.
22    MR. KENWORTHY: So --
23    THE COURT: So I'm not following what you are
24  saying.
25    MR. NASH: I'm sorry.

19

1    THE COURT: No, no, no. It's not probably -- I
2  don't know whose fault it is, but let's assume it's my
3  fault.
4    You said, Mr. Kenworthy said five pages of these
5  hundreds of pages of invalidity contentions address
6  inherency. Is that a fair characterization?
7    MS. KRAMAN: I have not counted the pages, but I
8  can say that, yes, inherency is the central focal point, but
9  our inherency theory was disclosed in the text in the claim
10  charts themselves, whenever the Ansell invalidity
11  contentions. And then we gave them the micrographs. They
12  have them to support the inherency contentions. The only
13  that they are waiting for is the arrow. That's it.
14    THE COURT: All right.
15    MR. KENWORTHY: Well, that's exactly the problem
16  we discussed in June, is that if you don't show where you
17  contend the element is, it's meaningless, and that's exactly
18  what they were ordered to do and they have not done yet.
19    THE COURT: Okay. All right. So what I'm going
20  to do is, when you have supplied it to Mr. Nash, he said
21  he's going to do it at the end of the week, and that will
22  start the clock running on you to respond.
23    MR. KENWORTHY: Can I just address the
24  confidentiality?
25    THE COURT: Okay. Yes, yes, yes.

20

1    MR. KENWORTHY: Because that is --
2    THE COURT: Wait. I'm trying to recall. The
3  other order that I did, that was about your expert, not
4  about your expert?
5    MS. KRAMAN: Yes.
6    MR. KENWORTHY: Under the confidentiality? Yes,
7  your Honor.
8    THE COURT: Okay.
9    MR. KENWORTHY: With respect to confidentiality,
10  Mr. Nash is talking apples and oranges.
11    THE COURT: Well, that's the reason I was trying
12  to get him to focus on what he produced, not on what you
13  produced. I don't really care about what you produced in
14  this context.
15    MR. KENWORTHY: What we produced is not
16  analogous. This is supposed to be just a picture, a
17  picture. It's not telling you any information about --
18    THE COURT: You're now talking about what he has
19  produced?
20    MR. KENWORTHY: What he produced without
21  annotation.
22    THE COURT: Right. And so he will annotate by
23  the end of next week.
24    MR. KENWORTHY: And, actually, I can show you.
25  It is attached to the same --

21

1    THE COURT: I've seen various pictures. Does it
2  really do anything for me?
3    MR. KENWORTHY: It might look like something
4  like that (indicating).
5    THE COURT: Yes, okay.
6    MR. KENWORTHY: Without any annotation.
7    THE COURT: That looks like the pictures of the
8  moon in 1969.
9    MR. KENWORTHY: This isn't it, but it's
10  something like that.
11    Now, I will pass on what we were talking about
12  which dealt with our development, confidential developmental
13  process. When we provided our, pursuant to the Court's
14  order, our claim charts of micrographs of products,
15  including their products, we did not designate any
16  micrographs confidential.
17    THE COURT: Okay. Well, so --
18    MR. KENWORTHY: So they are saying this is a
19  piece of prior art, and here's a picture of prior art under
20  high magnification.
21    THE COURT: All right. Well, hold on a minute.
22    MR. KENWORTHY: I'm sorry.
23    THE COURT: I take it, do you agree that what
24  you are showing as confidential is a piece of prior art?
25    MR. NASH: It's a piece of prior art that

22

1  contains features that are inherent, and that necessarily
2  means they're not actually explicitly disclosed in the prior
3  art reference.  And they are -- what is inherent is, are
4  features of a product made by my client.  And so we
5  designated it as confidential.
6          THE COURT:  Well, it sounds like, it sounds like
7  Mr. Kenworthy is right on this one.  You've got something
8  that I guess is in the public domain.  That's what you are
9  saying?
10         MR. NASH:  The patent is in the public domain,
11  and the features --
12         THE COURT:  But the features you have not
13  marked.  Right?
14         MR. KENWORTHY:  The product is in the public
15  domain, too.
16         MR. NASH:  Your Honor, this idea of annotation,
17  when he gets the annotated figures, there will be absolutely
18  no mystery as to where the arrow is pointing to.  He knows
19  where they're going to be pointing to.
20         THE COURT:  All right.  He's just raising
21  them -- you know, I'm trying to get through to the end here.
22  It sounds to me like you've given him something and I don't
23  know why you don't just de-designate it and remove this
24  objection.
25         MR. NASH:  I will.

23

1          THE COURT:  Okay.
2          MR. NASH:  I will.
3          THE COURT:  All right.  That's good.  Thank
4  you.
5          All right.  So have we gotten to somewhere here
6  now, which is he's going to remove did the designation, he's
7  going to annotate it.  You are going to get it.
8          They have done something on inherency.  You're
9  going to need do something on inherency that is commensurate
10  with what they have done.
11         MR. KENWORTHY:  Well, they have a burden of
12  proof by clear and convincing evidence.  But I will do
13  something, the best I can do.  I understand I will have to
14  answer.
15         THE COURT:  Okay.  We're making small progress
16  here.
17         MR. KENWORTHY:  Yes.
18         THE COURT:  All right.  Interrogatory Number 9
19  is improper because it's not -- it does not purport to
20  relate to any asserted claim or defense.
21         MS. KRAMAN:  Before we get to Number 9, your
22  Honor, Interrogatory 7, Interrogatory 7, we just wanted to
23  make sure whether that factored into your count because we
24  withdrew it.
25         THE COURT:  Oh.

24

1          MS. KRAMAN:  And based on what you had said --
2          THE COURT:  How did I --
3          MS. KRAMAN:  Well, we just wanted to make sure
4  because based on what you had said about how you were
5  counting the documents?
6          THE COURT:  Interrogatory Number 7 would have
7  counted as one.
8          MS. KRAMAN:  All right.  So because it asks
9  for --
10         THE COURT:  Does it ask for documents and
11  counted for two?
12         MS. KRAMAN:  Yes.
13         THE COURT:  Sorry.
14         MS. KRAMAN:  Okay.  Because we withdrew
15  Interrogatory 7, so whatever number you had came to, we can
16  minus two.
17         THE COURT:  Yes.
18         MR. KENWORTHY:  Excuse me, your Honor.  That's
19  dead wrong under case law.  The case law in the rule says
20  you may serve a certain number, and if we've had to go
21  through objections, it does not come off your count.
22         I can give your Honor a whole bunch --
23         THE COURT:  Well, I will tell you what.  We are
24  not actually --
25         MR. KENWORTHY:  That's later.  Right.

25

1          THE COURT:  I was going to say, you know,
2  nobody -- I don't know what the law is on that.  I can
3  probably guess and it won't be an abuse of discretion, but
4  rather than doing that, we'll note it's withdrawn.
5          You say maybe it's -- they say it's 17.  You say
6  it's 19.  You know, if you can't figure that out between the
7  two of you, you can come down and see me again.
8          MR. KENWORTHY:  Understood.
9          THE COURT:  All right.  Interrogatory Number 9,
10  which is, I believe, what appeared to me to be the
11  inequitable conduct interrogatory, and I did look and see
12  there was no inequitable conduct, and then I went back to
13  the letter of Mr. Kenworthy that then said, "unclean hands,"
14  which I take it is a broad enough umbrella to include most
15  anything.
16         MR. KENWORTHY:  I think it was their letter that
17  said unclean hands.
18         THE COURT:  That's what they said you were
19  saying.
20         MS. KRAMAN:  No, no.  We pled a defense of
21  unclean hands.
22         THE COURT:  Oh, all right.
23         MS. KRAMAN:  They ignored that in their letter.
24         THE COURT:  Once again, I'm confused as to who
25  is who here.

26

1          MS. KRAMAN:  Yes.  Reckitt pled unclean hands in
2    response to their request for equitable relief in our
3    complaint.
4          THE COURT:  All right.  And, you know, unclean
5    hands.  I looked at it and it said, because you're bringing
6    this baseless -- somebody is bringing this baseless lawsuit.
7    You are the one bringing this baseless --
8          MR. KENWORTHY:  No.  That's what they say is the
9    unclean hands.  They don't say it has nothing to do with not
10   providing something to the Patent Office.
11         THE COURT:  No, I understand.  So they say you
12   brought a baseless lawsuit, and yet this has nothing to do
13   with a baseless lawsuit.  This has something to do with, it
14   appears to me to be inequitable conduct.
15         Yes, Ms. Kraman?
16         MS. KRAMAN:  Just to explain, the issue is a
17   little unique and so I just wanted to explain it a little
18   bit.
19         THE COURT:  Okay.
20         MS. KRAMAN:  I think what they were arguing
21   about in their letter and the case that they cite, the
22   Micro-Motion case goes to is cautioning against fishing
23   expeditions, and in that case it was in the context of a
24   third party subpoena.  In this case we're talking about
25   documents that they produced in this case that are testing

27

1    of our product, of our prior art product.  And we are --
2    what we're asking in their interrogatory is whether that
3    testing was given to the PTO.
4          THE COURT:  And just, am I not correct that
5    whatever was given to the PTO should be in the prosecution
6    history file and that you're asking the question that you
7    should know the answer to?
8          MS. KRAMAN:  Well, yes and no in that there was
9    testing data.  There was a selective disclosure in the
10   patent, so there's some testing data in the patent.  But
11   this report indicates, and communications surrounding this
12   report indicates that everything wasn't given, and so we
13   want to know whether it was given and, if not, why not.
14         And so we're not on a fishing expedition.  We're
15   talking about -- we're exploring documents that they
16   produced to us in this case related to our product as prior
17   art.
18         THE COURT:  But you are not exploring the
19   documents as to, like, what do these mean, or who wrote
20   them.  You're exploring something entirely different.
21         MS. KRAMAN:  Well, you know, you have to plead
22   inequitable conduct with particularity, and as Judge Farnan
23   noted in the ICU Medical case that we cited, you need to
24   discover the inequitable, any potential inequitable conduct
25   claim used to discover before pleading them.  And we take

28

1    our Rule 11 obligation seriously.
2          THE COURT:  I'm glad.
3          MS. KRAMAN:  So we are trying to explore this
4    narrow issue.  It's not a fishing expedition.  We're asking
5    for information related to the specific documents identified
6    by Bates number.
7          THE COURT:  All right.  Do you have anything
8    more to say on that, Mr. Kenworthy?
9          MR. KENWORTHY:  Just a little bit.  They know
10   what is in.  As your Honor pointed out, they know what has
11   been disclosed.  They are asking more specifically and going
12   further to say, we're supposed to say why the single most
13   reasonable inference to be drawn by the failure to disclose
14   it.  They are asking specifically related questions to the
15   standard.
16         THE COURT:  Actually, you know, that's the
17   reason why when I looked at this, I thought it was
18   inequitable conduct.
19         MR. KENWORTHY:  It is.
20         THE COURT:  All right.  Well, it does not seem
21   to me just because inequitable conduct is traditionally pled
22   later here, that therefore opens it up to discovery before
23   it's pled.
24         So I'm going to, I guess, grant Mr. Kenworthy's
25   request on Interrogatory Number 9.  Have I finally got the

29

1    parties straight here?
2          MR. KENWORTHY:  Yes, your Honor.
3          MS. KRAMAN:  Yes.
4          THE COURT:  And then that leaves Interrogatory
5    Number 13, which is the argument that it's premature.
6    And -- oh, this is the damages one.
7          MS. KRAMAN:  Yes.
8          THE COURT:  So I was thinking about this
9    because I take it the response here is you could get one, I
10   suppose -- well, first off, actually, what Reckitt Benckiser
11   is -- are you actually selling a product that supposedly
12   infringes the patent right now?
13         MS. KRAMAN:  Correct.
14         THE COURT:  Okay.
15         MS. KRAMAN:  We're competitors.
16         THE COURT:  Okay.  All right.  Okay.  Well,
17   that's helpful.
18         All right.  So have you produced anything about,
19   say, sales of your product?
20         MS. KRAMAN:  I know we definitely owe them
21   documents, and we talked about, when we met and conferred,
22   that we were willing to wait on this one because we concede
23   that we do owe them some documents, so we are willing to
24   wait on this one.
25         THE COURT:  Okay.

30

1      MS. KRAMAN:  We maintain they should have to
2  answer it.
3      THE COURT:  No.  I think they should have to --
4      MR. KENWORTHY:  We agree.  We agree with that.
5  We will have to answer it.
6      THE COURT:  Okay.  So, good.  You practically
7  resolved one without me.
8      All right.  Okay.  So is there anything else?
9      MR. KENWORTHY:  I don't think so, your Honor.
10  Oh, once we get done all of this, I just wanted
11  to raise --
12      THE COURT:  Okay.  So let's do this.  Just
13  wrapping this up, you know, the transcript will serve as my
14  rulings on the objections here.  And there's a question of
15  timing.  The ones that are, so to speak, due now, or due as
16  of today?
17      MR. KENWORTHY:  Could we have two weeks for
18  that, your Honor?
19      THE COURT:  Two weeks seems reasonable to me.
20      MR. NASH:  That's fine with us, your Honor.  You
21  said the clock starts ticking when we submit the
22  annotations.  Two weeks from them?
23      MR. KENWORTHY:  Two weeks from that one for
24  them.
25      THE COURT:  I would say two weeks from whenever

31

1  it is.  And let's say you were going to do it by next
2  Friday, so he would have two weeks from then.
3      MR. KENWORTHY:  That's fine.
4      MR. NASH:  You can have two weeks for all of
5  them.  That's fine.
6      THE COURT:  All right.  That wraps up that.
7      Yes, Mr. Kenworthy?
8      MR. KENWORTHY:  The one thing I just wanted to
9  bring up, and it's a separate issue, but I learned yesterday
10  that Reckitt has filed an IPR on two of the four patents.
11      THE COURT:  Okay.
12      MR. KENWORTHY:  And this has been an issue that
13  they suggested they thought they were going to do but didn't
14  know for sure and have candidly communicated what they've
15  been able to communicate about their intentions for a long
16  time.
17      THE COURT:  All right.
18      MR. KENWORTHY:  I think it had to be filed by --
19  yesterday was the last day.  We may, so we are not dealing
20  with this, may move for a stay.
21      And I wanted --
22      THE COURT:  Wait.  Remind me again, you're the
23  plaintiff?
24      MR. KENWORTHY:  We're the plaintiff, which is
25  not the norm.  I understand.

32

1      THE COURT:  No, no, no.
2      MR. KENWORTHY:  It is not the norm.
3      THE COURT:  Okay.
4      MR. KENWORTHY:  But we don't want to be in two
5  places if we don't have to and I don't want to argue
6  anything about it.  What we would propose that if we're
7  going to do it, we would do it by next Friday.
8      THE COURT:  All right.
9      MR. KENWORTHY:  And what we thought maybe is if
10  we could have an expedited shortened pages and expedited
11  handling of that.
12      THE COURT:  Well, so, is this something -- you
13  said there has been some talk.
14      MR. KENWORTHY:  Yes.
15      THE COURT:  And they filed yesterday?
16      MR. NASH:  Two days ago.
17      THE COURT:  Two days ago.  Have you talked since
18  then?
19      MR. KENWORTHY:  We have not and I'm happy to
20  do that.  I just have gotten the sense that they oppose a
21  stay.
22      MR. NASH:  We're not interested in a stay, your
23  Honor.
24      THE COURT:  Okay.  All right.  You know, it's
25  one of these things that, the kind of thing that a certain

33

1  amount of talking back and forth because, you know, I had
2  the impression earlier, and maybe I was incorrect, but I had
3  the impression earlier that some things were being filed
4  without being sufficiently discussed between you, so I
5  didn't want to be too hip critical and say, oh, yes, yes.
6  Bring me on things that are definitely grounds for
7  discussion.  All right.  So, in any event, that is the
8  reason I was asking.
9      So what you're asking essentially,
10  Mr. Kenworthy, is, you would like --
11      MR. KENWORTHY:  I'm happy to --
12      THE COURT:  -- to get a fairly expedited process
13  on this.  I guess essentially an expedited motion to stay.
14      MR. KENWORTHY:  Yes, your Honor, because we have
15  lots of things coming up, and I would be happy to limit it
16  to three pages of letters apiece.  I don't want to give a
17  lot of writing.
18      THE COURT:  All right.  So we're here.  If you
19  want, I can do nothing, but if you want to -- if you are not
20  prejudiced by the way this is being brought up and you have
21  anything to say, I don't mind trying to work out what we're
22  going to do process-wise on this.
23      MR. NASH:  Reckitt's position is, we don't want
24  a stay.  The IPRs are very narrow.  There's no prior art at
25  issue in the IPR.  It's based on the later two patents that

34

1 were filed.
2       We claim in the IPR that they are not entitled
3 to the filing date of the parent, and therefore the parent
4 invalidates -- the published application of the parent
5 invalidates the later two patents.
6       So that's the only issue at all in terms of
7 validity that's being adjudicated by the PTAB if they decide
8 to even institute it, which is many months away from
9 deciding whether to institute it.
10      THE COURT:  Probably six months.
11      MR. NASH:  I think that's probably right.  It
12 depends on whether they file a patent owner response.  But
13 six months at the outer is when we'll know whether they're
14 even going to institute.
15      We don't want a stay.  We have very significant
16 defenses that key off of Markman, which is the process we're
17 about to start, and ultimately, it will be briefing in
18 January.  We want to see that process through.
19      So you asked would we be prejudiced.  I would
20 like to have, if they're going to move to stay the whole
21 case, I would like the opportunity to put on a full defense
22 of that and I don't want to limit myself to three pages.
23 Not that I want to send a 25 page brief to you either, but
24 it's a really important issue, because we don't want the
25 case stayed.  So I'm not really interested in limiting what

35

1 I say to three pages.
2       MR. KENWORTHY:  That's fine.  I just proposed
3 it.
4       MS. KRAMAN:  Counsel want to add one thing, too,
5 just to make it clear, that if they do move to stay, that
6 self-help is not warranted as far as that the case needs to
7 continue, because we've had situations in this case with
8 depositions being canceled and things of that nature, and so
9 we do want to make sure that it's clear that the case isn't
10 stayed unless it's stayed by you.
11      THE COURT:  No.  Filing a motion to stay does
12 not act as a stay.
13      So I guess there are two things, one of which
14 is, I'm perfectly happy to have letters rather than briefs
15 of whatever length.  They don't have to be three pages.
16 They can be longer.  They can be up to ten pages
17 single-spaced, but they can be shorter, because, you know,
18 all of the legal stuff that's put in the motions to stay,
19 that's just extra words.  You know, I get lots of these
20 things.
21      So basically, I'm usually interested in what are
22 your three -- what are your arguments on the three relevant
23 factors and they can be presented in a letter just as well
24 as a brief.
25      You know, I think my history generally is that

36

1 I'm not much for granting stays before the PTAB has actually
2 granted, taken the petition.
3       MR. KENWORTHY:  Of course, that's usually
4 because it's a request against the party who didn't file the
5 motion for stay.  I think that's a big significance.
6       THE COURT:  Well, hold on a second.  Yes, I
7 would say I have never had an opposed motion by a plaintiff
8 for a stay.  That's your point?
9       MR. KENWORTHY:  My point.  The reason you don't
10 grant a stay before it's taken is because you're imposing
11 upon the patent owner without it being decided to be taken.
12      THE COURT:  Well, that's something I hadn't
13 thought of, so that's an interesting thing.
14      But, in any event, so you can file a brief.  You
15 can file a letter, and whether it's a letter or a brief,
16 and, of course, you can file yours as soon as you want.
17      Perhaps Ms. Kraman has heard it before.
18 Whenever somebody wants expedited treatment, the first thing
19 I think of is the Federal Circuit saying, self-expedite,
20 meaning you can file yours on Monday, but they are still
21 going to have what the rules allow unless -- well, they can
22 have what the rules allow, but then you can file your reply
23 the day after and it will be done in two-and-a-half weeks.
24 But take your time, do what you need to do.
25      But either a letter or a brief would be fine,

37

1 and if you do that, chances are I will either get you all
2 back here for a discussion pretty -- well, actually, I don't
3 want to predict what I will do.  And as I said, I always
4 hear all the case law, or that's just taking up space.
5       If you have something about, you know, when the
6 plaintiff asked for a stay, it should be treated
7 differently, or somehow things weigh differently, a case or
8 two on that topic would be of interest to me.  Okay?
9       MR. KENWORTHY:  Yes, your Honor.  I was just
10 hoping to expedite it since they've known this issue was
11 coming up for six months.  They've known what they were
12 going to file and how they could deal with the request for a
13 stay.  But if I can't get it shortened, I can't get it
14 shortened.
15      THE COURT:  Well, you know, just thinking based
16 on their description of what the IPR is, if it's, in fact,
17 the case -- you claim the prior patent applications are
18 anticipatory?
19      MR. NASH:  The printed publication of the parent
20 application of the '412 patent, which is the first patent of
21 the four, that is -- because they're not entitled to go all
22 the way back --
23      THE COURT:  No, no, I understand the concept of
24 what you are doing.
25      MR. NASH:  Yes.

1          THE COURT:  But you are saying what you have in
2    front of the PTAB is anticipation, not obviousness?
3          MR. NASH:  Correct.
4          MR. KENWORTHY:  Yes.
5          THE COURT:  Okay.
6          MR. NASH:  And that is --
7          THE COURT:  So one of the things is, if they are
8    successful, presumably, it's still going to have two patents
9    that claim pretty much exactly the same thing.
10          MR. KENWORTHY:  If they're successful for one,
11    it depends whether there are any amendments, so we have that
12    issue.
13          If they are unsuccessful, I think it's likely we
14    would withdraw the other two patents, and we have now two
15    patents that don't have any 102 or 103 challenges.
16          THE COURT:  All right.
17          MR. NASH:  That actually isn't correct.
18          THE COURT:  You know what, we are now getting
19    beyond what probably -- I'm just thinking out loud.  Again,
20    I have to tell myself, you shouldn't do that.
21          So file something.  I'm not going to expedite
22    it.  There seems to me to be no particular reason to
23    expedite it.  And once everything, once I get everything --
24    by the way, if you do write a letter, just start off so that
25    my staff doesn't wonder what you are doing, saying, "As the

39

1    Court permits."
2          MR. KENWORTHY:  At today's conference.
3          THE COURT:  Yes, okay, because instead of
4    rejecting it, they always ask me, did you do this?
5          MR. KENWORTHY:  Will do, your Honor.
6          THE COURT:  Okay.
7          MR. KENWORTHY:  Thank you.
8          THE COURT:  All right.  And we'll see what
9    happens.  All right.  Thank you very much.
10          (Counsel respond, "Thank you, your Honor.")
11          (Conference concluded at 3:20 p.m.)
12                - - -
13
14
15
16
17
18
19
20
21
22
23
24
25

**'**

**'412** [1] - 37:20

**1**

**1** [4] - 4:13, 4:15, 4:17, 5:9
**102** [3] - 13:22, 13:23, 38:15
**103** [1] - 38:15
**11** [1] - 28:1
**13** [1] - 29:5
**14** [1] - 1:12
**15-00915-RGA** [1] - 1:9
**17** [1] - 25:5
**19** [3] - 3:22, 5:4, 25:6
**1969** [1] - 21:8

**2**

**2004** [1] - 4:1
**2016** [2] - 1:12, 7:22
**222** [1] - 3:25
**25** [1] - 34:23
**2:37** [2] - 1:12, 3:4

**3**

**3** [1] - 7:22
**3:20** [1] - 39:11
**3rd** [3] - 11:23, 13:7, 17:20

**4**

**4** [1] - 4:14

**5**

**5** [2] - 7:17, 11:7

**6**

**6** [5] - 4:15, 4:17, 7:17, 11:5, 11:7
**66** [3] - 12:4, 12:18, 12:23

**7**

**7** [7] - 3:25, 4:19, 11:5, 23:22, 24:6, 24:15

**8**

**8** [3] - 4:20, 5:9, 7:2

**9**

**9** [7] - 4:24, 5:9, 7:3, 23:18, 23:21, 25:9, 28:25

**A**

**able** [4] - 10:8, 11:19, 12:17, 31:15
**absolutely** [1] - 22:17
**abuse** [1] - 25:3
**accommodation** [1] - 17:11
**according** [1] - 15:24
**acknowledge** [1] - 16:10
**act** [1] - 35:12
**ACTION** [1] - 1:4
**add** [1] - 35:4
**addendum** [3] - 10:14, 12:9, 13:12
**address** [5] - 8:9, 9:24, 15:15, 19:5, 19:23
**addressed** [1] - 7:18
**adjudicated** [1] - 34:7
**administrative** [1] - 5:20
**afternoon** [5] - 3:6, 3:10, 3:13, 3:16, 3:19
**ago** [2] - 32:16, 32:17
**agree** [5] - 12:2, 12:17, 21:23, 30:4
**agreed** [2] - 12:15, 14:2
**agreeing** [2] - 17:10
**allow** [3] - 17:5, 36:21, 36:22
**almost** [1] - 7:19
**amend** [1] - 10:10
**amendments** [1] - 38:11
**amount** [1] - 33:1
**analogous** [1] - 20:16
**analysis** [1] - 9:9
**AND** [1] - 1:2
**ANDREWS** [1] - 1:14
**annotate** [4] - 14:1, 14:20, 20:22, 23:7
**annotated** [1] - 22:17
**annotating** [1] - 14:6
**annotation** [5] - 14:4, 15:5, 20:21, 21:6, 22:16
**annotations** [2] - 14:25, 30:22
**Ansell** [6] - 3:8, 5:6, 12:9, 15:17, 16:1,

19:10
**ANSELL** [1] - 1:4
**answer** [9] - 7:2, 7:8, 13:25, 14:4, 15:5, 23:14, 27:7, 30:2, 30:5
**answered** [1] - 5:21
**answering** [1] - 7:19
**anticipation** [3] - 9:12, 14:24, 38:2
**anticipatory** [2] - 8:4, 37:18
**apiece** [1] - 33:16
**APPEARANCES** [2] - 1:16, 2:1
**appeared** [1] - 25:10
**apples** [1] - 20:10
**application** [2] - 34:4, 37:20
**applications** [1] - 37:17
**appropriate** [2] - 17:4, 18:14
**argue** [1] - 32:5
**arguing** [5] - 3:12, 16:15, 17:24, 18:8, 26:20
**argument** [5] - 7:13, 18:9, 18:16, 18:18, 29:5
**arguments** [2] - 13:13, 35:22
**Arms** [1] - 3:25
**arrow** [3] - 14:8, 19:13, 22:18
**arrows** [1] - 14:2
**art** [17] - 7:23, 8:4, 9:8, 9:12, 9:13, 9:14, 10:18, 13:23, 15:24, 21:19, 21:24, 21:25, 22:3, 27:1, 27:17, 33:24
**aside** [3] - 7:24, 9:21, 10:14
**asserted** [2] - 4:21, 23:20
**assume** [1] - 19:2
**attached** [2] - 12:18, 20:25
**attention** [1] - 14:20
**attorneys'** [3] - 15:8, 15:19, 15:22
**attributed** [1] - 4:21
**availed** [1] - 17:11
**aware** [1] - 13:18

**B**

**backdrop** [1] - 16:11
**Banks** [1] - 3:24

**BARLAY** [1] - 2:11
**based** [6] - 6:22, 8:4, 24:1, 24:4, 33:25, 37:15
**baseless** [5] - 26:6, 26:7, 26:12, 26:13
**Bates** [1] - 28:6
**bear** [1] - 7:9
**BEFORE** [1] - 1:14
**beginning** [1] - 3:4
**behalf** [1] - 3:11
**BENCKISER** [1] - 1:8
**Benckiser** [3] - 3:8, 7:21, 29:10
**best** [2] - 12:2, 23:13
**better** [3] - 7:5, 8:25, 14:25
**between** [2] - 25:6, 33:4
**beyond** [3] - 9:10, 10:17, 38:19
**big** [1] - 36:5
**bit** [3] - 12:13, 26:18, 28:9
**BOCKIUS** [2] - 1:17, 2:2
**brief** [1] - 34:23, 35:24, 36:14, 36:15, 36:25
**briefing** [1] - 34:17
**briefs** [1] - 35:14
**bring** [2] - 31:9, 33:6
**bringing** [3] - 26:5, 26:6, 26:7
**broad** [1] - 25:14
**brought** [2] - 26:12, 33:20
**bunch** [1] - 24:22
**burden** [3] - 5:24, 10:16, 23:11
**burdensome** [1] - 5:10
**BY** [4] - 1:18, 2:3, 2:8, 2:11

**C**

**canceled** [1] - 35:8
**candidly** [1] - 31:14
**cannot** [1] - 10:19
**care** [1] - 20:13
**case** [23] - 3:23, 12:15, 13:19, 15:6, 15:18, 17:7, 24:19, 26:21, 26:22, 26:23, 26:24, 26:25, 27:16, 27:23, 34:21, 34:25, 35:6, 35:7, 35:9, 37:4, 37:7, 37:17
**cases** [1] - 8:15

**causing** [1] - 16:7
**cautioning** [1] - 26:22
**central** [1] - 19:8
**certain** [3] - 4:4, 24:20, 32:25
**challenges** [1] - 38:15
**chambers** [1] - 3:4
**chances** [1] - 37:1
**characterization** [1] - 19:6
**charts** [4] - 9:19, 13:15, 19:10, 21:14
**circles** [1] - 4:3
**Circuit** [1] - 36:19
**cite** [2] - 3:23, 26:21
**cited** [3] - 12:25, 13:4, 27:23
**CIVIL** [1] - 1:4
**claim** [16] - 8:2, 8:8, 8:13, 8:23, 9:3, 9:18, 10:18, 13:14, 19:9, 21:14, 23:20, 27:25, 34:2, 37:17, 38:9
**claiming** [3] - 6:10, 6:24, 7:4
**claims** [4] - 4:21, 8:5, 9:8
**classic** [1] - 9:9
**clear** [4] - 10:16, 23:12, 35:5, 35:9
**client** [5] - 10:20, 15:21, 16:13, 16:25, 22:4
**clock** [2] - 19:22, 30:21
**Colm** [1] - 3:10
**COLM** [1] - 1:18
**Columbia** [1] - 4:1
**coming** [2] - 33:15, 37:11
**commensurate** [1] - 23:9
**common** [2] - 8:3, 11:16
**communicate** [1] - 31:15
**communicated** [1] - 31:14
**communications** [1] - 27:11
**comparable** [1] - 18:11
**comparing** [1] - 9:7
**competitors** [1] - 29:15
**complaining** [1] - 16:24
**complaint** [1] - 26:3
**compliance** [1] - 10:12

**complied** [1] - 7:22
**comply** [1] - 10:10
**CONAWAY** [1] - 2:7
**concede** [1] - 29:22
**concept** [1] - 37:23
**conception** [3] - 4:25, 5:12, 5:16
**concerned** [1] - 4:22
**concerning** [1] - 7:10
**concerns** [1] - 6:22
**concluded** [1] - 39:11
**conduct** [7] - 25:11, 25:12, 26:14, 27:22, 27:24, 28:18, 28:21
**conference** [4] - 3:3, 13:7, 39:2, 39:11
**conferred** [3] - 8:11, 17:1, 29:21
**confidential** [13] - 10:19, 15:9, 15:11, 15:19, 15:23, 16:5, 16:12, 21:12, 21:16, 21:24, 22:5
**confidentiality** [6] - 15:9, 17:8, 18:12, 19:24, 20:6, 20:9
**confused** [1] - 25:24
**connection** [2] - 12:5, 12:7
**Connolly** [2] - 3:9, 3:11
**CONNOLLY** [2] - 1:18, 3:10
**consider** [1] - 17:4
**consistent** [1] - 18:19
**construction** [6] - 8:3, 8:8, 8:13, 8:23, 8:24, 9:3
**constructions** [1] - 8:10
**construed** [1] - 9:8
**consult** [2] - 16:18, 16:23
**contains** [1] - 22:1
**contend** [2] - 11:3, 19:17
**contending** [2] - 6:25, 15:4
**contention** [2] - 13:23, 13:24
**contentions** [25] - 8:7, 8:25, 9:4, 9:5, 9:19, 10:10, 11:16, 11:18, 11:19, 11:20, 11:23, 11:24, 11:25, 12:1, 13:8, 13:9, 13:14, 13:18, 13:20, 17:14, 18:9, 19:5, 19:11, 19:12
**context** [2] - 20:14,

26:23
**continue** [1] - 35:7
**Continued** [1] - 2:1
**contributing** [1] - 5:19
**contribution** [1] - 4:24
**contributions** [2] - 5:11, 5:15
**conversation** [1] - 15:16
**convincing** [2] - 10:17, 23:12
**correct** [5] - 16:9, 27:4, 29:13, 38:3, 38:17
**counsel** [2] - 35:4, 39:10
**Counsel** [2] - 2:5, 2:13
**count** [2] - 23:23, 24:21
**counted** [6] - 4:5, 4:8, 4:10, 19:7, 24:7, 24:11
**counter** [1] - 10:16
**counting** [2] - 3:21, 24:5
**couple** [2] - 12:10, 14:1
**course** [3] - 13:12, 36:3, 36:16
**COURT** [127] - 1:1, 3:6, 3:13, 3:19, 6:1, 6:6, 6:15, 7:1, 7:12, 7:15, 8:14, 8:20, 9:20, 9:23, 10:2, 10:4, 10:21, 11:4, 11:9, 11:13, 12:5, 12:12, 12:19, 12:23, 13:1, 13:3, 13:16, 14:6, 14:9, 14:11, 14:14, 14:21, 14:23, 15:3, 15:7, 16:1, 16:4, 16:14, 16:17, 16:22, 17:13, 17:21, 17:23, 18:1, 18:6, 18:21, 18:23, 19:1, 19:14, 19:19, 19:25, 20:2, 20:8, 20:11, 20:18, 20:22, 21:1, 21:5, 21:7, 21:17, 21:21, 21:23, 22:6, 22:12, 22:20, 23:1, 23:3, 23:15, 23:18, 23:25, 24:2, 24:6, 24:10, 24:13, 24:17, 24:23, 25:1, 25:9, 25:18, 25:22, 25:24, 26:4, 26:11, 26:19, 27:4, 27:18, 28:2, 28:7, 28:16, 28:20, 29:4, 29:8, 29:14,

29:16, 29:25, 30:3, 30:6, 30:12, 30:19, 30:25, 31:6, 31:11, 31:17, 31:22, 32:1, 32:3, 32:8, 32:12, 32:15, 32:17, 32:24, 33:12, 33:18, 34:10, 35:11, 36:6, 36:12, 37:15, 37:23, 38:1, 38:5, 38:7, 38:16, 38:18, 39:3, 39:6, 39:8
**Court** [4] - 1:24, 10:15, 12:2, 39:1
**Court's** [3] - 7:22, 10:11, 21:13
**covers** [1] - 5:20
**critical** [1] - 33:5

# D

**damages** [1] - 29:6
**DAMON** [1] - 2:11
**data** [2] - 27:9, 27:10
**date** [12] - 4:18, 4:22, 5:3, 6:9, 6:11, 6:14, 6:16, 6:25, 7:3, 7:11, 34:3
**days** [2] - 32:16, 32:17
**de** [1] - 22:23
**de-designate** [1] - 22:23
**dead** [1] - 24:19
**deadline** [1] - 12:8
**deal** [1] - 37:12
**dealing** [3] - 9:11, 9:15, 31:19
**dealt** [3] - 9:18, 18:10, 21:12
**decide** [1] - 34:7
**decided** [1] - 36:11
**deciding** [1] - 34:9
**defendant** [1] - 4:7
**Defendant** [2] - 1:9, 2:13
**defense** [6] - 6:3, 6:7, 6:8, 23:20, 25:20, 34:21
**defenses** [1] - 34:16
**deficient** [1] - 13:7
**definitely** [2] - 29:20, 33:6
**DELAWARE** [1] - 1:2
**Delaware** [1] - 1:11
**demand** [1] - 4:4
**deposition** [1] - 14:18
**depositions** [1] - 35:8
**description** [1] - 37:16
**designate** [2] - 21:15, 22:23

**designated** [5] - 15:11, 15:19, 15:23, 16:4, 22:5
**designates** [1] - 15:22
**designation** [5] - 15:9, 16:15, 16:19, 17:3, 23:6
**detailed** [2] - 11:25, 13:5
**developed** [1] - 9:6
**development** [1] - 21:12
**developmental** [1] - 21:12
**DI** [3] - 12:4, 12:18, 12:23
**different** [3] - 5:18, 9:24, 27:20
**differently** [2] - 37:7
**directed** [1] - 10:15
**directive** [1] - 7:22
**directly** [1] - 6:12
**disclose** [1] - 28:13
**disclosed** [3] - 19:9, 22:2, 28:11
**disclosure** [1] - 27:9
**discover** [2] - 27:24, 27:25
**discovery** [6] - 4:3, 11:17, 11:23, 13:7, 13:9, 28:22
**discretion** [1] - 25:3
**discussed** [2] - 19:16, 33:4
**discussion** [2] - 33:7, 37:2
**dispute** [2] - 7:10, 13:9
**DISTRICT** [2] - 1:1, 1:2
**district** [2] - 11:16, 11:21
**District** [1] - 3:25
**divorced** [1] - 8:21
**docket** [2] - 12:3, 12:4
**documents** [13] - 4:5, 4:7, 4:19, 6:22, 16:11, 24:5, 24:10, 26:25, 27:15, 27:19, 28:5, 29:21, 29:23
**domain** [3] - 22:8, 22:10, 22:15
**done** [6] - 8:8, 8:11, 18:18, 19:18, 23:8, 23:10, 30:10, 36:23
**Doug** [1] - 3:17
**DOUGLAS** [1] - 2:11
**down** [1] - 25:7
**drawn** [1] - 28:13
**due** [3] - 7:19, 30:15

# E

**either** [5] - 5:3, 17:10, 34:23, 36:25, 37:1
**element** [2] - 18:13, 19:17
**end** [4] - 17:10, 19:21, 20:23, 22:21
**entire** [1] - 13:20
**entirely** [1] - 27:20
**entitled** [2] - 34:2, 37:21
**equitable** [1] - 26:2
**Especially** [1] - 7:21
**ESQ** [4] - 1:18, 2:3, 2:8, 2:11
**essentially** [4] - 3:22, 4:9, 33:9, 33:13
**evaluate** [1] - 7:5
**event** [4] - 4:4, 7:15, 33:7, 36:14
**evidence** [2] - 10:17, 23:12
**exactly** [4] - 14:13, 19:15, 19:17, 38:9
**exchanged** [1] - 8:10
**excuse** [1] - 24:18
**exercise** [1] - 7:6
**Exhibit** [1] - 12:18
**expedite** [4] - 36:19, 37:10, 38:21, 38:23
**expedited** [5] - 32:10, 33:12, 33:13, 36:18
**expedition** [2] - 27:14, 28:4
**expeditions** [1] - 26:23
**expert** [8] - 7:19, 8:1, 8:16, 9:9, 11:17, 16:23, 20:3, 20:4
**expert's** [1] - 8:17
**experts** [3] - 9:6, 10:8, 16:19
**explain** [3] - 3:22, 26:16, 26:17
**explicitly** [1] - 22:2
**explore** [1] - 28:3
**exploring** [3] - 27:15, 27:18, 27:20
**extend** [1] - 12:8
**extended** [1] - 10:9
**extension** [2] - 12:14, 12:17
**extra** [3] - 12:10, 12:13, 35:19
**eyes** [3] - 15:8, 15:19, 15:22

## F

**F.R.D** [1] - 3:25
**fact** [2] - 9:7, 37:16
**factored** [1] - 23:23
**factors** [1] - 35:23
**failure** [1] - 28:13
**fair** [1] - 19:6
**fairly** [3] - 4:2, 8:3, 33:12
**far** [5] - 4:22, 5:24, 8:12, 15:22, 35:6
**Farnan** [1] - 27:22
**fault** [2] - 19:2, 19:3
**features** [5] - 9:14, 22:1, 22:4, 22:11, 22:12
**Federal** [1] - 36:19
**figure** [2] - 12:20, 25:6
**figures** [1] - 22:17
**file** [11] - 12:16, 27:6, 34:12, 36:4, 36:14, 36:15, 36:16, 36:20, 36:22, 37:12, 38:21
**filed** [6] - 12:24, 31:10, 31:18, 32:15, 33:3, 34:1
**filing** [5] - 6:11, 6:14, 7:11, 34:3, 35:11
**finally** [1] - 28:25
**fine** [5] - 30:20, 31:3, 31:5, 35:2, 36:25
**first** [9] - 10:23, 10:24, 11:14, 12:24, 13:2, 17:1, 29:10, 36:18, 37:20
**fishing** [3] - 26:22, 27:14, 28:4
**five** [4] - 4:9, 4:10, 17:19, 19:4
**focal** [1] - 19:8
**focus** [1] - 20:12
**following** [2] - 3:3, 18:23
**FOR** [1] - 1:2
**formulation** [1] - 16:13
**formulations** [1] - 15:25
**forth** [1] - 33:1
**four** [5] - 4:16, 5:17, 6:23, 31:10, 37:21
**Friday** [3] - 1:12, 31:2, 32:7
**front** [1] - 38:2
**full** [2] - 13:14, 34:21

## G

**gee** [1] - 8:16

## 

**general** [4] - 9:11, 11:10, 11:11, 11:20
**generally** [1] - 35:25
**given** [5] - 22:22, 27:3, 27:5, 27:12, 27:13
**glad** [1] - 28:2
**grant** [2] - 28:24, 36:10
**granted** [1] - 36:2
**granting** [1] - 36:1
**grounds** [1] - 33:6
**guess** [6] - 9:2, 22:8, 25:3, 28:24, 33:13, 35:13
**gun** [1] - 9:15
**Gunning** [1] - 1:24

## H

**half** [1] - 36:23
**handled** [1] - 17:8
**handling** [1] - 32:11
**hands** [4] - 25:13, 25:17, 25:21, 26:1, 26:5, 26:9
**happy** [5] - 14:3, 32:19, 33:11, 33:15, 35:14
**hard** [1] - 10:15
**HEALTHCARE** [1] - 1:4
**hear** [3] - 7:20, 10:21, 37:4
**heard** [1] - 36:17
**hearing** [3] - 11:23, 13:10, 18:16
**held** [1] - 3:4
**hello** [1] - 3:18
**help** [1] - 35:6
**helpful** [1] - 29:17
**high** [1] - 21:20
**highly** [3] - 15:19, 16:5, 16:11
**himself** [1] - 17:12
**hip** [1] - 33:5
**history** [2] - 27:6, 35:25
**hold** [4] - 11:4, 17:21, 21:21, 36:6
**Honor** [25] - 3:10, 3:16, 3:18, 7:8, 9:17, 14:18, 15:15, 17:16, 18:14, 18:18, 20:7, 22:16, 23:22, 24:18, 24:22, 28:10, 29:2, 30:9, 30:18, 30:20, 32:23, 33:14, 37:9, 39:5, 39:10
**HONORABLE** [1] - 1:14

**hoping** [1] - 37:10
**hundreds** [5] - 11:24, 13:14, 17:14, 17:15, 19:5

## I

**ICU** [1] - 27:23
**idea** [2] - 4:17, 22:16
**identification** [1] - 8:24
**identified** [4] - 4:20, 6:15, 15:18, 28:5
**identify** [2] - 4:24, 6:13
**identifying** [1] - 5:10
**ignored** [1] - 25:23
**images** [5] - 12:11, 13:11, 13:13, 14:2, 14:7
**importance** [1] - 7:7
**important** [4] - 6:5, 6:9, 13:6, 34:24
**imposing** [1] - 36:10
**impression** [3] - 16:6, 33:2, 33:3
**improper** [1] - 23:19
**IN** [2] - 1:1, 1:2
**include** [1] - 25:14
**including** [1] - 21:15
**inconsistent** [1] - 18:17
**incorrect** [1] - 33:2
**incredibly** [3] - 5:10, 11:25, 13:5
**indicates** [2] - 27:11, 27:12
**indicating)** [1] - 21:4
**indication** [1] - 6:24
**individuals** [3] - 4:25, 5:11, 5:16
**inequitable** [8] - 25:11, 25:12, 26:14, 27:22, 27:24, 28:18, 28:21
**inference** [1] - 28:13
**information** [6] - 4:4, 5:22, 6:13, 7:4, 20:17, 28:5
**informed** [2] - 8:25, 14:25
**informs** [1] - 9:4
**infringement** [2] - 9:5, 13:8
**infringes** [1] - 29:12
**inherency** [12] - 9:13, 13:13, 17:18, 17:23, 18:9, 19:6, 19:8, 19:9, 19:12, 23:8, 23:9

**inherent** [2] - 22:1, 22:3
**initial** [3] - 9:18, 9:19, 11:22
**insist** [1] - 18:13
**instead** [1] - 39:3
**institute** [3] - 34:8, 34:9, 34:14
**intentions** [1] - 31:15
**interest** [1] - 37:8
**interested** [3] - 32:22, 34:25, 35:21
**interesting** [1] - 36:13
**Interrogatories** [1] - 7:17
**interrogatories** [5] - 4:6, 10:24, 13:22, 15:20
**interrogatory** [9] - 3:21, 10:25, 11:2, 13:19, 23:18, 24:6, 25:9, 25:11, 27:2
**Interrogatory** [7] - 4:13, 5:9, 23:22, 24:15, 28:25, 29:4
**interrupt** [1] - 8:14
**invalidates** [2] - 34:4, 34:5
**invalidity** [14] - 6:9, 9:4, 9:11, 9:19, 10:10, 11:20, 11:22, 11:24, 12:1, 13:9, 17:14, 18:20, 19:5, 19:10
**inventor** [1] - 4:21
**inventors** [2] - 4:25, 5:11
**inventorship** [2] - 6:5, 6:6
**IPR** [4] - 31:10, 33:25, 34:2, 37:16
**IPRs** [1] - 33:24
**issue** [15] - 5:24, 6:5, 6:6, 17:17, 17:18, 26:16, 28:4, 31:9, 31:12, 33:25, 34:6, 34:24, 37:10, 38:12
**issues** [1] - 17:8

## J

**January** [1] - 34:18
**joined** [1] - 3:11
**Judge** [2] - 4:2, 27:22
**jump** [1] - 9:15
**June** [6] - 7:22, 9:18, 11:23, 13:7, 17:20, 19:16

## K

**keep** [2] - 8:15, 11:13
**KENWORTHY** [67] - 2:3, 5:15, 7:8, 7:14, 8:9, 8:19, 9:2, 9:22, 10:1, 10:3, 10:6, 15:13, 16:9, 17:16, 17:22, 17:25, 18:10, 18:22, 19:15, 19:23, 20:1, 20:6, 20:9, 20:15, 20:20, 20:24, 21:3, 21:6, 21:9, 21:18, 21:22, 22:14, 23:11, 23:17, 24:18, 24:25, 25:8, 25:16, 26:8, 28:9, 28:19, 29:2, 30:4, 30:9, 30:17, 30:23, 31:3, 31:8, 31:12, 31:18, 31:24, 32:2, 32:4, 32:9, 32:14, 32:19, 33:11, 33:14, 35:2, 36:3, 36:9, 37:9, 38:4, 38:10, 39:2, 39:5, 39:7
**Kenworthy** [15] - 3:12, 3:14, 8:15, 13:10, 15:7, 15:16, 16:6, 16:18, 18:6, 19:4, 22:7, 25:13, 28:8, 31:7, 33:10
**Kenworthy's** [1] - 28:24
**key** [1] - 34:16
**kind** [4] - 8:12, 9:24, 15:9, 32:25
**knowing** [1] - 8:25
**known** [3] - 4:3, 37:10, 37:11
**knows** [1] - 22:18
**Kraman** [4] - 3:15, 3:17, 26:15, 36:17
**KRAMAN** [46] - 2:8, 3:16, 6:4, 6:8, 6:20, 10:23, 11:7, 11:11, 11:14, 12:7, 12:13, 12:22, 12:24, 13:2, 13:4, 13:17, 14:8, 14:10, 14:13, 14:16, 15:1, 15:4, 15:11, 19:7, 20:5, 23:21, 24:1, 24:3, 24:8, 24:12, 24:14, 25:20, 25:23, 26:1, 26:16, 26:20, 27:8, 27:21, 28:3, 29:3, 29:7, 29:13, 29:15, 29:20, 30:1, 35:4

## L

**lab** [1] - 6:17
**last** [6] - 7:24, 9:16, 9:17, 12:25, 31:19
**law** [4] - 24:19, 25:2, 37:4
**lawsuit** [3] - 26:6, 26:12, 26:13
**lawyers** [1] - 15:13
**learned** [1] - 31:9
**leaves** [1] - 29:4
**leaving** [1] - 7:24
**legal** [1] - 35:18
**length** [1] - 35:15
**letter** [13] - 11:1, 12:21, 12:24, 13:2, 25:13, 25:16, 25:23, 26:21, 35:23, 36:15, 36:25, 38:24
**letters** [2] - 33:16, 35:14
**LEWIS** [2] - 1:17, 2:2
**likely** [3] - 7:10, 17:5, 38:13
**limit** [2] - 33:15, 34:22
**limiting** [1] - 34:25
**LLC** [2] - 1:5, 1:8
**LLP** [4] - 1:17, 2:2, 2:7, 2:11
**look** [3] - 5:22, 21:3, 25:11
**looked** [6] - 3:20, 4:14, 5:14, 17:13, 26:5, 28:17
**looking** [1] - 5:22
**looks** [1] - 21:7
**loud** [1] - 38:19

## M

**magnification** [1] - 21:20
**maintain** [1] - 30:1
**marked** [2] - 10:18, 22:13
**Markman** [1] - 34:16
**matter** [3] - 5:1, 5:13, 7:25
**mean** [6] - 5:15, 5:20, 7:10, 8:5, 27:19
**meaning** [3] - 8:17, 8:18, 36:20
**meaningless** [2] - 4:16, 19:17
**means** [2] - 14:4, 22:2
**Medical** [1] - 27:23
**memory** [1] - 12:20
**mentioned** [2] - 13:10, 15:7

**met** [3] - 8:11, 17:1, 29:21
**Micro** [1] - 26:22
**Micro-Motion** [1] - 26:22
**micrograph** [5] - 10:18, 15:8, 16:19, 16:20, 18:12
**micrographs** [4] - 15:17, 19:11, 21:14, 21:16
**might** [5] - 6:25, 7:7, 12:9, 15:21, 21:3
**mind** [1] - 33:21
**minus** [1] - 24:16
**minute** [4] - 7:24, 9:25, 17:21, 21:21
**misunderstood** [1] - 16:6
**Monday** [2] - 14:20, 36:20
**months** [5] - 7:19, 34:8, 34:10, 34:13, 37:11
**moon** [1] - 21:8
**moot** [1] - 7:12
**MORGAN** [2] - 1:17, 2:2
**most** [6] - 7:12, 14:19, 15:18, 17:4, 25:14, 28:12
**Motion** [1] - 26:22
**motion** [7] - 12:8, 12:16, 12:18, 33:13, 35:11, 36:5, 36:7
**motions** [1] - 35:18
**move** [3] - 31:20, 34:20, 35:5
**MR** [94] - 3:10, 3:18, 5:15, 7:8, 7:14, 8:9, 8:19, 9:2, 9:22, 10:1, 10:3, 10:6, 14:17, 14:22, 15:13, 15:15, 16:3, 16:9, 16:10, 16:16, 16:21, 16:23, 17:16, 17:22, 17:25, 18:4, 18:10, 18:22, 18:25, 19:15, 19:23, 20:1, 20:6, 20:9, 20:15, 20:20, 20:24, 21:3, 21:6, 21:9, 21:18, 21:22, 21:25, 22:10, 22:14, 22:16, 22:25, 23:2, 23:11, 23:17, 24:18, 24:25, 25:8, 25:16, 26:8, 28:9, 28:19, 29:2, 30:4, 30:9, 30:17, 30:20, 30:23, 31:3, 31:4, 31:8, 31:12,

31:18, 31:24, 32:2, 32:4, 32:9, 32:14, 32:16, 32:19, 32:22, 33:11, 33:14, 33:23, 34:11, 35:2, 36:3, 36:9, 37:9, 37:19, 37:25, 38:3, 38:4, 38:6, 38:10, 38:17, 39:2, 39:5, 39:7
**MS** [45] - 3:16, 6:4, 6:8, 6:20, 10:23, 11:7, 11:11, 11:14, 12:7, 12:13, 12:22, 12:24, 13:2, 13:4, 13:17, 14:8, 14:10, 14:13, 14:16, 15:1, 15:4, 15:11, 19:7, 20:5, 23:21, 24:1, 24:3, 24:8, 24:12, 24:14, 25:20, 25:23, 26:1, 26:16, 26:20, 27:8, 27:21, 28:3, 29:3, 29:7, 29:13, 29:15, 29:20, 30:1, 35:4
**mystery** [1] - 22:18

## N

**named** [4] - 4:21, 4:25, 5:11, 5:16
**narrow** [4] - 13:21, 13:24, 28:4, 33:24
**NASH** [28] - 2:11, 3:18, 14:17, 14:22, 15:15, 16:3, 16:10, 16:16, 16:21, 16:23, 18:4, 18:25, 21:25, 22:10, 22:16, 22:25, 23:2, 30:20, 31:4, 32:16, 32:22, 33:23, 34:11, 37:19, 37:25, 38:3, 38:6, 38:17
**Nash** [4] - 3:17, 13:11, 19:20, 20:10
**nature** [1] - 35:8
**necessarily** [2] - 6:21, 22:1
**need** [7] - 11:15, 13:25, 14:3, 17:9, 23:9, 27:23, 36:24
**needed** [1] - 12:13
**needs** [3] - 8:7, 8:11, 35:6
**never** [5] - 10:25, 13:8, 17:5, 17:11, 36:7
**New** [1] - 2:12
**next** [5] - 14:17, 14:22, 20:23, 31:1, 32:7

**nine** [1] - 7:19
**NO** [1] - 1:9
**nobody** [1] - 25:2
**norm** [2] - 31:25, 32:2
**NOTE** [1] - 3:3
**note** [3] - 10:25, 13:6, 25:4
**noted** [1] - 27:23
**nothing** [3] - 26:9, 26:12, 33:19
**number** [7] - 4:6, 5:18, 5:19, 17:17, 24:15, 24:20, 28:6
**Number** [8] - 4:13, 5:9, 23:18, 23:21, 24:6, 25:9, 28:25, 29:5
**numerosity** [1] - 11:12

## O

**o'clock** [1] - 1:12
**objected** [1] - 10:25
**objection** [8] - 8:1, 9:16, 9:24, 11:1, 11:8, 11:10, 11:11, 22:24
**objections** [6] - 5:5, 5:8, 10:9, 11:10, 24:21, 30:14
**obligation** [1] - 28:1
**obviously** [1] - 5:21
**obviousness** [1] - 38:2
**occupying** [1] - 14:18
**October** [1] - 1:12
**OF** [1] - 1:2
**Office** [2] - 3:24, 26:10
**Official** [1] - 1:24
**often** [1] - 8:24
**oftentimes** [1] - 13:19
**once** [4] - 25:24, 30:10, 38:23
**one** [28] - 3:23, 3:24, 4:11, 4:17, 5:6, 5:23, 7:24, 8:9, 12:1, 13:23, 14:19, 15:24, 15:25, 22:7, 24:7, 26:7, 29:6, 29:9, 29:22, 29:24, 30:7, 30:23, 31:8, 32:25, 35:4, 35:13, 38:7, 38:23
**ones** [2] - 3:23, 30:15
**opens** [1] - 28:22
**opinions** [1] - 8:6
**opportunity** [1] - 34:21
**oppose** [1] - 32:20
**opposed** [1] - 36:7

**oranges** [1] - 20:10
**order** [5] - 7:2, 10:11, 15:12, 20:3, 21:14
**ordered** [2] - 18:15, 19:18
**outer** [1] - 34:13
**owe** [2] - 29:20, 29:23
**owner** [2] - 34:12, 36:11
**owns** [1] - 16:13

## P

**p.m** [3] - 1:12, 3:4, 39:11
**page** [1] - 34:23
**pages** [14] - 11:24, 13:14, 17:14, 17:15, 17:19, 19:4, 19:5, 19:7, 32:10, 33:16, 34:22, 35:1, 35:15, 35:16
**parent** [4] - 34:3, 34:4, 37:19
**part** [6] - 5:8, 9:16, 9:20, 10:6
**particular** [4] - 9:14, 10:24, 38:22
**particularity** [1] - 27:22
**particularly** [2] - 9:13, 10:7
**parties** [3] - 12:16, 17:7, 29:1
**parties'** [1] - 8:25
**partner** [1] - 3:12
**party** [2] - 26:24, 36:4
**party's** [1] - 13:20
**pass** [1] - 21:11
**past** [1] - 17:8
**Patent** [1] - 26:10
**patent** [9] - 22:10, 27:10, 29:12, 34:12, 36:11, 37:17, 37:20
**patents** [8] - 5:2, 5:13, 31:10, 33:25, 34:5, 38:8, 38:14, 38:15
**patents-in-suit** [1] - 5:2
**Pennsylvania** [1] - 2:3
**people** [5] - 5:19, 5:23, 8:4, 8:5, 16:25
**perfectly** [1] - 35:14
**perhaps** [1] - 36:17
**permits** [1] - 39:1
**person** [2] - 10:19, 17:9
**pertinent** [2] - 6:2, 6:13
**petition** [1] - 36:2

**Philadelphia** [1] - 2:3
**photographs** [2] - 4:9, 4:10
**picture** [3] - 20:16, 20:17, 21:19
**pictures** [2] - 21:1, 21:7
**piece** [4] - 13:23, 21:19, 21:24, 21:25
**pieces** [6] - 5:18, 7:23, 9:8, 9:12, 9:14
**PILAR** [1] - 2:8
**Pilar** [1] - 3:16
**places** [1] - 32:5
**plain** [2] - 8:17
**Plaintiff** [2] - 1:6, 2:5
**plaintiff** [5] - 3:11, 31:23, 31:24, 36:7, 37:6
**plead** [1] - 27:21
**pleading** [1] - 27:25
**pled** [4] - 25:20, 26:1, 28:21, 28:23
**point** [7] - 8:2, 9:1, 14:8, 16:18, 19:8, 36:8, 36:9
**pointed** [1] - 28:10
**pointing** [3] - 18:13, 22:18, 22:19
**pointless** [1] - 7:6
**portion** [1] - 4:20
**position** [2] - 7:5, 33:23
**positions** [1] - 8:4
**potential** [2] - 6:21, 27:24
**practically** [1] - 30:6
**practice** [4] - 5:1, 5:12, 5:17, 6:19
**predict** [1] - 37:3
**prejudiced** [2] - 33:20, 34:19
**premature** [3] - 7:18, 7:25, 29:5
**prematurity** [1] - 11:7
**presented** [1] - 35:23
**presumably** [2] - 6:18, 38:8
**pretty** [2] - 37:2, 38:9
**printed** [1] - 37:19
**priority** [9] - 4:18, 4:22, 5:2, 6:9, 6:11, 6:14, 6:16, 6:25, 7:3
**problem** [3] - 10:7, 16:8, 19:15
**process** [8] - 5:17, 8:12, 8:22, 21:13, 33:12, 33:22, 34:16, 34:18
**process-wise** [1] -

33:22
**produce** [1] - 12:11
**produced** [14] - 6:22, 15:17, 16:7, 18:1, 18:5, 20:12, 20:13, 20:15, 20:19, 20:20, 26:25, 27:16, 29:18
**product** [9] - 6:18, 18:13, 22:4, 22:14, 27:1, 27:16, 29:11, 29:19
**products** [2] - 21:14, 21:15
**PRODUCTS** [1] - 1:4
**progress** [1] - 23:15
**proof** [2] - 10:16, 23:12
**properly** [1] - 9:8
**propose** [1] - 32:6
**proposed** [2] - 8:10, 35:2
**prosecution** [1] - 27:5
**protective** [1] - 15:12
**provided** [2] - 10:13, 21:13
**providing** [1] - 26:10
**PTAB** [3] - 34:7, 36:1, 38:2
**PTO** [2] - 27:3, 27:5
**public** [3] - 22:8, 22:10, 22:14
**publication** [1] - 37:19
**published** [1] - 34:4
**purport** [1] - 23:19
**purported** [1] - 10:12
**pursuant** [1] - 21:13
**put** [2] - 34:21, 35:18

## Q

**questions** [1] - 28:14
**quote** [3] - 5:9, 7:21

## R

**raise** [1] - 30:11
**raised** [4] - 6:6, 6:8, 13:8, 17:2
**raising** [1] - 22:20
**rather** [2] - 25:4, 35:14
**read** [1] - 13:3
**really** [12] - 5:24, 9:3, 9:7, 12:20, 16:14, 17:23, 18:2, 20:13, 21:2, 34:24, 34:25
**reason** [13] - 5:4, 6:10, 8:1, 8:20, 8:21, 9:21, 14:23, 15:23, 20:11, 28:17, 33:8, 36:9, 38:22

**reasonable** [2] - 28:13, 30:19
**rebuttal** [4] - 11:16, 11:19, 13:22
**Reckitt** [6] - 3:8, 3:17, 7:21, 26:1, 29:10, 31:10
**RECKITT** [1] - 1:8
**Reckitt's** [1] - 33:23
**reducing** [1] - 6:18
**reduction** [3] - 5:1, 5:12, 5:16
**reference** [1] - 22:3
**references** [1] - 15:24
**reflect** [1] - 16:13
**refused** [2] - 12:14, 12:15
**regarding** [1] - 10:23
**regardless** [1] - 13:5
**regards** [2] - 4:13, 7:17
**rejecting** [1] - 39:4
**relate** [2] - 5:25, 23:20
**related** [3] - 27:16, 28:5, 28:14
**relates** [3] - 6:4, 6:10, 6:11
**relevant** [2] - 6:19, 35:22
**relief** [1] - 26:2
**rely** [1] - 7:11
**remind** [1] - 31:22
**remove** [2] - 22:23, 23:6
**reply** [1] - 36:22
**report** [2] - 27:11, 27:12
**Reporter** [1] - 1:24
**REPORTER'S** [1] - 3:3
**reports** [2] - 7:19, 8:16
**request** [4] - 26:2, 28:25, 36:4, 37:12
**resolved** [2] - 12:17, 30:7
**respect** [2] - 7:23, 20:9
**respond** [3] - 10:8, 19:22, 39:10
**responded** [1] - 10:12
**response** [4] - 11:20, 26:2, 29:9, 34:12
**responses** [3] - 11:1, 11:2, 14:24
**RICHARD** [1] - 1:14
**role** [1] - 5:23
**Rule** [1] - 28:1
**rule** [2] - 11:21, 24:19
**rules** [2] - 36:21, 36:22

**rulings** [1] - 30:14
**running** [1] - 19:22

## S

**sales** [1] - 29:19
**scheduled** [1] - 8:12
**seated** [1] - 3:7
**second** [6] - 9:20, 11:4, 11:15, 16:1, 17:1, 36:6
**see** [7] - 4:12, 11:5, 11:25, 25:7, 25:11, 34:18, 39:8
**seem** [1] - 28:20
**selective** [1] - 27:9
**self** [2] - 35:6, 36:19
**self-expedite** [1] - 36:19
**self-help** [1] - 35:6
**selling** [1] - 29:11
**Senate** [1] - 3:25
**send** [1] - 34:23
**sense** [1] - 32:20
**sent** [1] - 3:20
**separate** [4] - 4:5, 8:12, 8:22, 31:9
**Sergeant** [1] - 3:25
**seriously** [1] - 28:1
**serve** [4] - 12:8, 13:19, 14:20, 30:13
**served** [3] - 10:9, 11:22, 15:20
**setting** [1] - 9:21
**shortened** [2] - 32:10, 37:13, 37:14
**shorter** [1] - 35:17
**show** [12] - 10:19, 15:10, 15:12, 15:21, 16:25, 17:3, 17:6, 17:9, 18:9, 18:12, 19:16, 20:24
**showing** [1] - 21:24
**shown** [1] - 10:17
**side** [1] - 8:16
**sides** [1] - 7:5
**significance** [1] - 36:5
**significant** [1] - 34:15
**single** [2] - 28:12, 35:17
**single-spaced** [1] - 35:17
**situations** [1] - 35:7
**six** [3] - 34:10, 34:13, 37:11
**small** [1] - 23:15
**somewhere** [1] - 23:5
**soon** [1] - 36:16
**sorry** [3] - 18:6, 18:25, 21:22

**Sorry** [1] - 24:13
**sort** [1] - 17:7
**sounds** [3] - 22:6, 22:22
**space** [1] - 37:4
**spaced** [4] - 4:20, 11:10, 16:17, 28:5
**specific** [4] - 4:20, 11:10, 16:17, 28:5
**specifically** [2] - 28:11, 28:14
**staff** [2] - 5:20, 38:25
**standard** [1] - 28:15
**STARGATT** [1] - 2:7
**start** [3] - 19:22, 34:17, 38:24
**starts** [1] - 30:21
**STATES** [1] - 1:1
**stay** [17] - 12:15, 31:20, 32:21, 32:22, 33:13, 33:24, 34:15, 34:20, 35:5, 35:11, 35:12, 35:18, 36:5, 36:8, 36:10, 37:6, 37:13
**stayed** [1] - 34:25, 35:10
**stays** [1] - 36:1
**still** [2] - 36:20, 38:8
**straight** [1] - 29:1
**stuff** [1] - 35:18
**subject** [3] - 5:1, 5:12, 7:18
**submit** [1] - 30:21
**submitted** [3] - 12:5, 12:7, 12:21
**subpart** [4] - 4:16, 4:19, 4:20, 4:24, 7:2
**subparts** [5] - 3:21, 4:15, 4:17, 5:9, 6:12
**subpoena** [1] - 26:24
**subsequently** [1] - 12:16
**substantial** [1] - 17:17
**successful** [2] - 38:8, 38:10
**sufficiency** [1] - 9:18
**sufficiently** [1] - 33:4
**suggest** [1] - 9:2
**suggested** [1] - 31:13
**suit** [1] - 5:2
**supplement** [1] - 14:3
**supplied** [1] - 19:20
**support** [2] - 4:7, 19:12
**supporting** [1] - 13:13
**suppose** [1] - 29:10
**supposed** [2] - 20:16, 28:12
**supposedly** [2] - 15:8, 29:11

**surrounding** [1] - 27:11
**syracuse** [1] - 2:12

## T

**table** [1] - 13:6
**task** [1] - 5:10
**TAYLOR** [1] - 2:7
**technical** [3] - 10:19, 15:14, 16:25
**technician** [1] - 6:17
**ten** [1] - 35:16
**terms** [2] - 8:24, 34:6
**testimony** [1] - 8:1
**testing** [5] - 12:10, 26:25, 27:3, 27:9, 27:10
**text** [1] - 19:9
**THE** [128] - 1:1, 1:2, 3:6, 3:13, 3:19, 6:1, 6:6, 6:15, 7:1, 7:12, 7:15, 8:14, 8:20, 9:20, 9:23, 10:2, 10:4, 10:21, 11:4, 11:9, 11:13, 12:5, 12:12, 12:19, 12:23, 13:1, 13:3, 13:16, 14:6, 14:9, 14:11, 14:14, 14:21, 14:23, 15:3, 15:7, 16:1, 16:4, 16:14, 16:17, 16:22, 17:13, 17:21, 17:23, 18:1, 18:6, 18:21, 18:23, 19:1, 19:14, 19:19, 19:25, 20:2, 20:8, 20:11, 20:18, 20:22, 21:1, 21:5, 21:7, 21:17, 21:21, 21:23, 22:6, 22:12, 22:20, 23:1, 23:3, 23:15, 23:18, 23:25, 24:2, 24:6, 24:10, 24:13, 24:17, 24:23, 25:1, 25:9, 25:18, 25:22, 25:24, 26:4, 26:11, 26:19, 27:4, 27:18, 28:2, 28:7, 28:16, 28:20, 29:4, 29:8, 29:14, 29:16, 29:25, 30:3, 30:6, 30:12, 30:19, 30:25, 31:6, 31:11, 31:17, 31:22, 32:1, 32:3, 32:8, 32:12, 32:15, 32:17, 32:24, 33:12, 33:18, 34:10, 35:11, 36:6, 36:12, 37:15, 37:23, 38:1, 38:5, 38:7, 38:16,

38:18, 39:3, 39:6, 39:8
**themselves** [1] - 19:10
**theory** [1] - 19:9
**therefore** [2] - 28:22, 34:3
**they've** [10] - 6:22, 10:13, 14:1, 15:18, 16:11, 18:17, 31:14, 37:10, 37:11
**thinking** [3] - 29:8, 37:15, 38:19
**third** [1] - 26:24
**Thomas** [1] - 3:12
**THOMAS** [1] - 2:3
**three** [7] - 6:23, 33:16, 34:22, 35:1, 35:15, 35:22
**ticking** [1] - 30:21
**timing** [1] - 30:15
**today** [2] - 8:10, 30:16
**today's** [1] - 39:2
**ton** [1] - 15:17
**took** [1] - 5:17
**topic** [4] - 8:7, 10:5, 10:6, 37:8
**totally** [1] - 8:21
**traditionally** [1] - 28:21
**transcript** [1] - 30:13
**treated** [3] - 16:11, 18:11, 37:6
**treating** [1] - 16:12
**treatment** [1] - 36:18
**trying** [6] - 18:2, 20:2, 20:11, 22:21, 28:3, 33:21
**turn** [1] - 14:20
**two** [33] - 4:5, 4:8, 5:6, 7:23, 9:12, 9:14, 10:24, 13:21, 15:13, 24:11, 24:16, 25:7, 30:17, 30:19, 30:22, 30:23, 30:25, 31:2, 31:4, 31:10, 32:4, 32:16, 32:17, 33:25, 34:5, 35:13, 36:23, 37:8, 38:8, 38:14
**two-and-a-half** [1] - 36:23
**types** [2] - 16:11, 17:8

## U

**U.S.D.C.J** [1] - 1:14
**ultimately** [1] - 34:17
**umbrella** [1] - 25:14
**unclean** [6] - 25:13, 25:17, 25:21, 26:1,

26:4, 26:9
**under** [4] - 15:12, 20:6, 21:19, 24:19
**understood** [1] - 25:8
**unique** [1] - 26:17
**UNITED** [1] - 1:1
**unless** [4] - 12:14, 16:6, 35:10, 36:21
**unsuccessful** [1] - 38:13
**up** [10] - 17:10, 28:22, 30:13, 31:6, 31:9, 33:15, 33:20, 35:16, 37:4, 37:11
**useless** [1] - 5:10

## V

**Valerie** [1] - 1:24
**validity** [5] - 11:18, 11:19, 13:18, 13:20, 34:7
**various** [1] - 21:1
**versus** [1] - 3:8
**vs** [2] - 1:7, 3:24
**vulcanization** [1] - 14:9

## W

**wait** [8] - 11:17, 14:6, 16:1, 18:7, 29:22, 29:24, 31:22
**Wait** [1] - 20:2
**waiting** [2] - 14:1, 19:13
**wants** [2] - 16:24, 36:18
**warranted** [1] - 35:6
**week** [6] - 12:25, 14:16, 14:17, 14:22, 19:21, 20:23
**weeks** [9] - 12:10, 30:17, 30:19, 30:22, 30:23, 30:25, 31:2, 31:4, 36:23
**weigh** [1] - 37:7
**well-known** [1] - 4:3
**whole** [2] - 24:22, 34:20
**willing** [3] - 17:11, 29:22, 29:23
**Wilmington** [1] - 1:11
**wise** [1] - 33:22
**withdraw** [1] - 38:14
**withdrawing** [1] - 17:3
**withdrawn** [1] - 25:4
**withdrew** [2] - 23:24, 24:14
**wonder** [1] - 38:25

**words** [1] - 35:19
**worried** [1] - 15:20
**wrapping** [1] - 30:13
**wraps** [1] - 31:6
**write** [1] - 38:24
**writing** [1] - 33:17
**wrote** [1] - 27:19

## Y

**year** [2] - 6:16, 6:20
**years** [3] - 5:18, 6:23
**yesterday** [4] - 14:18, 31:9, 31:19, 32:15
**York** [1] - 2:12
**YOUNG** [1] - 2:7

# Exhibit C

2016 WL 5791409
Only the Westlaw citation is currently available.
United States District Court,
D. Delaware.

Medigus Ltd., Plaintiff,

v.

Endochoice, Inc., Defendant.

Civil Action No. 15–505–LPS–CJB
|
Signed 07/19/2016

### MEMORANDUM ORDER

Christopher J. Burke, UNITED STATES MAGISTRATE JUDGE

**\*1**  At Wilmington this **19th day of July, 2016.**

**WHEREAS**, the Court has considered both Plaintiff Medigus Ltd.'s ("Plaintiff") and Defendant EndoChoice, Inc.'s ("Defendant") letter submissions, (D.I. 67; DI. 69; D.I. 71; D.I. 73), relating to the parties' pending motion seeking resolution of certain discovery disputes, (D.I. 63), as well as the parties' arguments made during the teleconference with the Court on Wednesday, July 13, 2016; [1]

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Defendant's motion be resolved as follows:

1. The first dispute addressed herein regards Defendant's Interrogatory Nos. 8–16, which Plaintiff refuses to answer due to, *inter alia*, its belief that those interrogatories exceed the maximum number of interrogatories provided for in the Scheduling Order. (D.I. 67 at 3; D.I. 73 at 1) Plaintiff's position is premised on its belief that Defendant's Interrogatory Nos. 1–5 actually should be counted as 28 separate interrogatories. (D.I. 73 at 1)

2. Per the Court's Scheduling Order, each party may serve on the other no more than 30 written interrogatories, including all discrete subparts. (D.I. 26 at ¶ 9(d)(1)); *see also* Fed. R. Civ. P. 33(a)(1). [2] Subparts are treated as part of a single interrogatory where "they are logically or factually subsumed within and necessarily related to the primary question." *Waterbury v. Scribner*, No. 1:05–cv–0764 OWW DLB PC, 2008 WL 2018432, at *2 (E.D. Cal. May 8, 2008) (quoting *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 445 (CD. Cal., 1998)); *see also Kendall v. GES Exposition Servs., Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997). To determine whether a subsequent question (i.e., a subpart) is subsumed by and related to the primary question in an interrogatory, courts consider:

> [W]hether the first question is primary and subsequent questions are secondary to the primary question. Or, can the subsequent question stand alone? Is it independent of the first question? Genuine subparts should not be counted as separate interrogatories. However, discrete or separate questions should be counted as separate interrogatories, notwithstanding [that] they are joined by a conjunctive word and may be related[.]

*Waterbury*, 2008 WL 2018432, at *2 (second alteration in original) (quoting *Kendall*, 174 F.R.D. at 685–86); *see also Willingham v. Ashcroft*, 226 F.R.D. 57, 59 (D.D.C. 2005) ("[O]nce a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate interrogatory no matter how it is designated."). This determination requires "a pragmatic approach." *Waterbury*, 2008 WL 201842, at *2. [3]

**\*2** 3. Here, the Court concludes that Defendant has shown why its Interrogatory Nos. 1–5 do not (as Plaintiff contends) amount to 28 separate interrogatories, or anything close to that. Thus, Defendant has not exceeded the maximum number of interrogatories set forth in the Scheduling Order.

4. As to Defendant's Interrogatory Nos. 1, 3 and 4, (D.I. 67, ex. 2 at 8–10), the subparts set out therein do not introduce "a line of inquiry that is separate and distinct" from the preceding inquiry found at the beginning of each respective interrogatory. For example, Defendant's Interrogatory No. 1 seeks Plaintiff's description of "the development efforts that Relate to the Alleged Medigus Inventions, Including" the dates for four specific events labeled as subparts (a) through (d) of the question: when each "Alleged Medigus Invention" was "first described in writing," "first manufactured," "first tested" or "first used to perform a medical procedure" on various subjects. (*Id.*, ex. 2 at 8) Despite Plaintiff's arguments to the contrary, (D.I. 73 at 1–2; *see also id.*, ex. D at 1), the four subparts simply request the dates for specific events (if they occurred) that appear "necessary to complete the details required" by the call of the question (i.e., a description of the development efforts related to Plaintiff's inventions). *Kendall*, 174 F.R.D. at 686; *see also New Park Entm't L.L.C. v. Elec. Factory Concerts, Inc.*, No. Civ.A 98–775, 2000 WL 62315, at *4 (E.D. Pa. Jan. 13, 2000) ("The court does not view subsidiary instructions to the interrogatories as propounding additional interrogatories, but merely specifying to the defendants the type of information plaintiff is eliciting in the interrogatories."). [4] Similarly, Interrogatory No. 5 starts with a general inquiry—a request to set out "the facts and circumstances surrounding Medigus' Petition for Certificate of Correction"—and then subsequently lists specific types of information that are both logically and factually related to that inquiry (such as when and how Plaintiff concluded that a Certificate of Correction was necessary, who was involved in that decision and why Plaintiff did not earlier reach this conclusion in any of eight listed years). (D.I. 67, ex. 2 at 10–11) [5]

**\*3** 5. Lastly, Defendant has acknowledged that its original Interrogatory No. 2 should in fact be considered two interrogatories, and it has re-cast it as revised Interrogatories Nos. 2–3. (D.I. 67, app. A) The Court agrees that this is appropriate in light of the caselaw set out above. [6]

6. Therefore, by the Court's count, Plaintiff is required to answer a total of 19 interrogatories: Defendant's original Interrogatory Nos. 1 and 3–15, as well as Defendant's revised Interrogatory Nos. 2–3 and 17–19. The Court thus concludes that Defendant's motion in this regard should be GRANTED, and that Plaintiff be ORDERED to respond to each of the interrogatories referenced above to which it has so far failed to respond. [7]

7. With respect to the dispute regarding Defendant's Requests for Admission ("RFA") Nos. 12–17 and two portions of Interrogatory No. 5, which Plaintiff refuses to answer due to, *inter alia*, its belief that these requests improperly seek legal conclusions and disclosure of expert opinion and testimony, (D.I. 67 at 1, 3; D.I. 73 at 3), Defendant's request is DENIED. [8]

8. Under Federal Rule of Civil Procedure 36, a party may serve "a written request to admit ... the truth of any matters ... relating to facts, the application of law to fact, or opinions about either[.]" Fed. R. Civ. P. 36(a). This Court has explained that "requests that seek legal conclusions are not allowed" (e.g., a request for a party to admit whether a patent is valid or is infringed). *Tulip Computs. Int'l, B.V. v. Dell Comput. Corp.*, 210 F.R.D. 100, 108 (D. Del. 2002) ("As a result, [for example,] requests directed towards applying the claims of the patent or requiring application of the claims prior to any Markman ruling are not the application of law to facts relevant to the case, but in reality are requests for legal conclusions

Case 1:17-cv-00688-LPS-CJB   Document 208-1   Filed 06/13/19   Page 29 of 50 PageID #: 10386

and therefore, improper."); *see also Fulhorst v. United Techs. Auto., Inc.*, No. CIV. A. 96–577–JJF, 1997 WL 873548, at *2–3 (D. Del. Nov. 17, 1997). "The line between a request to admit a pure legal conclusion and the application of law to fact can be murky because the application of law to fact necessarily incorporates an admission as to what the law is." *Aventure Comme'ns Tech., L.L.C. v. MCI Comme'ns Servs., Inc.*, No. 5:07–cv–04095–JEG–RAW, 2008 WL 4280371, at *1 (N.D. Iowa Sept. 16,2008). [9]

**\*4** 9. The Court concludes that Plaintiff has met its burden to show that Defendant's contested RFAs improperly seek legal conclusions. Here, the RFAs require Plaintiff's admission or denial that the Certificate of Correction—by changing a claim's isolated use of one word ("sheath") to another ("shaft")—either affected the claim's scope (by changing, broadening, or enlarging it), (D.I. 67, ex. 1 at 4), or otherwise resulted in the claim's inclusion of "subject matter that would not have infringed the originally issued claim [,]" (*id.*, ex. 1 at 5). Both the United States Court of Appeals for the Federal Circuit and this Court, however, have clearly explained that "whether a claim has been broadened through [a certificate of] correction" poses a "question of law" because answering the question "requires interpreting the old and new versions of that claim, and then determining whether the new version covers territory the old one did not." *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1353 (Fed. Cir. 2007); *see also S.O.I Tec Silicon On Insulator Techs., S.A. v. MEMC Elec. Materials, Inc.*, 745 F. Supp. 2d 489, 506 (D. Del. 2010) (stating that whether " 'the corrected claims are broader than the original claims' " is a "claim construction issue, [and thus] a question of law" (quoting *Cent. Admixture*, 482 F.3d at 1353–54)). Each challenged RFA, though sometimes phrased differently, in one way or another asks Plaintiff to do just this—to compare the "old and new versions" of the claim (that is, the claim as it existed pre—and post–Certificate of Correction) and "determin[e]" whether the change broadened the claim (or did not). Although the events relating to the Certificate of Correction pertain to an important issue in this case, Defendant should not be permitted to utilize its RFAs in this manner. Accordingly, the Court concludes that Plaintiff is justified in objecting to RFA Nos. 12–17 as improper under Rule 36, and therefore, need not respond.

10. For the reasons stated above, the Court **ORDERS** that, by no later than **July 29, 2016**, Plaintiff shall respond to Defendant's original Interrogatory Nos. 8–15, as well as to Defendant's revised Interrogatory Nos. 17–19.

11. Because this Memorandum Order may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the order. Any such redacted version shall be submitted no later than **July 26, 2016**, for review by the Court, along with a detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Memorandum Order.

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 5791409

Footnotes

1    In the parties' letter submissions, both Plaintiff and Defendant sought relief for the other's alleged failure to comply with discovery rules. The Court resolved the dispute raised by Plaintiff during the July 13, 2016 teleconference, and it thus resolves only the disputes raised by Defendant in this Memorandum Order.

2    Thus, Plaintiff's position is that Defendant reached that 30 interrogatory limit with Defendant's Interrogatory No. 7. (D.I. 73 at 1)

3    Once an objection to an interrogatory has been properly articulated, then the burden rests with the party seeking discovery (here, Defendant) to show that the request is proper under the Federal Rules of Civil Procedure; if it does so, then the objecting party (here, Plaintiff) must convince the court why discovery should not be had. *Harcum v. Leblanc*, 268 F.R.D. 207, 210 (E.D. Pa. 2010).

4    This same reasoning applies to Interrogatory No. 3, (D.I. 67, ex. 2 at 9 (requesting a description of "the development efforts" relating to "any and all Alleged Medigus Embodying Products," and further specifying that the description should "Includ[e]" when the product was "first described in writing," "first manufactured," "first tested" and "first used to perform a medical procedure")), and No. 4, (*id.*, ex. 2 at 9–10 (requesting a description of "the efforts and acts by those involved to conceive of, reduce to practice, and diligently reduce to practice each claim [allegedly infringed]," and that such description should "Includ[e]" specific information regarding each allegedly infringed claim—the date of conception and reduction to practice, the person(s) involved in such conception and reduction to practice and documents that evidence such events)).

5    In its letter, Plaintiff offered an argument unique to Interrogatory No. 5: that a subpart's request for "a separate response to eight different calendar years" required treating each response to each separate year as a discrete interrogatory. (D.I. 73 at 2) This argument, however, ignores the fact that Defendant is not asking a separate question with respect to each year, but rather is asking for a response to one question—why Plaintiff did not earlier recognize the need for a Certificate of Correction—and requesting that the response be structured in a certain manner (i.e., by year). The answer to the first part of the interrogatory is simply the sum of the answers to each of the inquiries with regard to each of these eight specific years. *Thomas v. Yates*, No. 1:05–cv–01198–LJO–JMD–HC, 2009 WL 3273280, at *3 (E.D. Cal. Oct. 9, 2009); *cf. Waterbury*, 2008 WL 2018432, at *3 (treating requests for information relating to separate years as "separate and distinct" where the information regarding one year was factually independent from the other years). Put differently, the form of the subpart is simply one way to tease out the desired information—why Plaintiff did not recognize the need for a certificate earlier. It is likely that Plaintiff's response, (D.I. 67, ex. 6 at 16–17), would not have been substantively different had Defendant instead asked, for example, when and how Plaintiff recognized the need to submit a Certificate of Correction.

6    Though not specifically challenged here by Plaintiff, Defendant also re-wrote the former Interrogatory No. 16 and broke it out into revised Interrogatory Nos. 17–19. (D.I. 67, app. A) The Court also agrees that this was appropriate.

7    The parties may re-number the resulting set of interrogatories as they see fit to avoid confusion going forward.

8    Plaintiff states that Defendant's letter briefing is the first time Defendant expressed its belief that Plaintiff's response to Interrogatory No. 5 was deficient in this manner. (D.I. 73 at 4) Because the parties have not used the required procedures to resolve this dispute, (*id.*; *see also* D.I. 26 at ¶ 9(g)(ii)), the Court will deny Defendant's request as to Interrogatory No. 5 without prejudice to renew pursuant to such procedures. With that said, the Court believes its resolution of the dispute regarding Plaintiff's RFA Nos. 12–17 should provide helpful guidance going forward.

9    The party objecting to an RFA bears the burden of persuasion. Fed. R. Civ. P. 36(a)(6) ("Unless the court finds an objection justified, it must order that an answer be served."); *see also Shapiro v. Am.'s Credit Union*, No. 12–cv–5237 RBL, 2012 WL 5410660, at *2 (W.D. Wash. Nov. 6, 2012) ("The burden of persuasion lies on the party objecting to the requests for admission.")

---

**End of Document**                                                                                  © 2019 Thomson Reuters. No claim to original U.S. Government Works.

**Appendix A. Comparison of EndoChoice Original Interrogatory Nos. 1-16
to Revised Interrogatory Nos. 1-19**

| ORIGINAL | REVISED | SUBSTANTIVE COMPONENT OF MEDIGUS RESPONSE TO ORIGINAL |
|---|---|---|
| 1.  Describe in detail the development efforts that Relate to the Alleged Medigus Inventions, Including: (a) the date on which each Alleged Medigus Invention was first described in writing; (b) the date on which each Alleged Medigus Invention was first manufactured; (c) the date on which each Alleged Medigus Invention was first tested; and (d) the date on which each Alleged Medigus Invention was first used to perform a medical procedure in: (1) an animal, (2) a human cadaver, and (3) a live human patient. | 1.  Describe in detail the development efforts that Relate to the Alleged Medigus Inventions. | (a) Medigus will produce relevant, non-privileged documents responsive to this interrogatory pursuant Federal Rule of Civil Procedure 33(d). (b) No commercially-released product manufactured by Medigus embodies any claim of the '871 Patent, but Medigus is still investigating non-commercial products. (c) No commercially-released product made by Medigus that embodies any claim of the '871 Patent has been tested by Medigus, but Medigus is still investigating noncommercial products. (d) No commercially-released product made by Medigus that embodies any claim of the '871 Patent has been used by Medigus to perform a medical procedure on an animal, a human cadaver, or a live human patient, but Medigus is still investigating noncommercial products. |

**Appendix A. Comparison of Original Interrogatory Nos. 1-16
to Revised Interrogatory Nos. 1-19**

| | | |
|---|---|---|
| 2.   Identify all Alleged Medigus Embodying Products (by product name, project name, internal code name, model designation, product number, part number, trademark or trade name, and any other unique designation or identifier), and for each such Alleged Medigus Embodying Product: (i) state which claim(s) of the '871 Patent is embodied by each such product; (ii) explain, using a claim chart or equivalently detailed method, specifically how each such product meets each limitation of each claim; (iii) identify the person or persons most knowledgeable about the structure and function of each such product; and (iv) state the date when Medigus first began making, using, selling, and/or offering for sale of each such product. | 2. Identify all Alleged Medigus Embodying Products (by product name, project name, internal code name, model designation, product number, part number, trademark or trade name, and any other unique designation or identifier).<br><br>3. For each Alleged Medigus Embodying Product identified in the response to Revised Interrogatory No. 2, state which claim(s) of the '871 Patent is embodied by each such product and explain, using a claim chart or equivalently detailed method, specifically how each such product meets each limitation of each claim. | (i) No commercially-released product made by Medigus embodies any claim of the '871 Patent. (ii) No commercially-released product made by Medigus embodies any claim of the '871 Patent. (iii) No commercially-released product made by Medigus embodies any claim of the '871 Patent. (iv) No commercially-released product made by Medigus embodies any claim of the '871 Patent. |
| 3.   Describe in detail the development efforts that Relate to any and all Alleged Medigus Embodying Products, Including: (a) the date on which each Alleged Medigus Embodying Product was first described in writing; (b) the date on which each Alleged Medigus Embodying Product was first manufactured; (c) the date on which each Alleged Medigus Embodying Product was first tested; and (d) the date on which each Alleged Medigus Embodying Productwas first used to perform a medical procedure in: (1) an animal, (2) a human cadaver, and (3) alive human patient. | 4.   Describe in detail the development efforts that Relate to any and all Alleged Medigus Embodying Products. | (a) No commercially-released product made by Medigus embodies any claim of the '871 Patent. (b) No commercially-released product made by Medigus embodies any claim of the '871 Patent. (c) No commercially-released product made by Medigus embodies any claim of the '871 Patent. (d) No commercially-released product made by Medigus embodies any claim of the '871 Patent. |
| 4.   For each claim of the '871 Patent that Medigus contends is infringed by an Accused EndoChoice Product, describe the efforts and acts by those involved to conceive of, reduce to practice, and diligently reduce to practice each claim, Including: | 5.   For each claim of the '871 Patent that Medigus contends is infringed by an Accused EndoChoice Product, describe the efforts and acts by those involved to conceive of, reduce to practice, and diligently reduce to practice each claim. | (i) Medigus will produce relevant, non-privileged documents responsive to this interrogatory pursuant Federal Rule of Civil Procedure 33(d). (ii) The claims of the '871 patent were invented by the named inventors. Medigus does not currently have further information responsive to |

**Appendix A. Comparison of Original Interrogatory Nos. 1-16
to Revised Interrogatory Nos. 1-19**

| | | |
|---|---|---|
| (i) stating the dates of conception and reduction to practice for each claim; (ii) identifying each person who conceived of each claim; (iii) identifying each person who actually (as opposed to constructively) reduced each claim to practice; and (iv) identifying all Documents that evidence the alleged conception, reduction to practice, and diligence in reducing to practice each claim. | | this subpart of this interrogatory. However, Medgius' investigation is still ongoing, and Medigus will supplement if responsive information and/or documents are located. (iii) Medigus is still investigating whether the '871 Patent was actually reduced to practice prior to its constructive reduction to practice. If actual reduction to practice occurred prior its constructive reduction to practice, Medigus will produce relevant, non-privileged documents responsive to this interrogatory pursuant Federal Rule of Civil Procedure 33(d). (iv) Medigus will produce relevant, non-privileged documents responsive to this interrogatory pursuant to Federal Rule of Civil Procedure 33(d). |
| 5. Explain in detail the facts and circumstances surrounding Medigus' Petition for Certificate of Correction, Including (i) when and how Medigus came to believe "that the examiner at the USPTO and the Applicant made a mutual clerical error by not amending 'distal end of said sheath' to --distal end of said shaft-- when it added 'a single continuous shaft including' phrase to claim 1 to obtain the allowance [of the '871 Patent]"; (ii) why Medigus did not recognize the supposed mutual clerical error (identified in the Petition for Certificate of Correction filed for the '871 Patent) at any time in: <br> a. 2005 <br> b. 2006 <br> c. 2007 <br> d. 2008 <br> e. 2009 <br> f. 2010 <br> g. 2011 | 6. Explain in detail the facts and circumstances surrounding Medigus' Petition for Certificate of Correction. | (i) Elazar Sonnenschein discovered the error upon review of the claims of his patent on or around June 2013. (ii) (a) The error was not discovered in 2005 because the event described in subpart (i) had yet to occur. (b) The error was not discovered in 2006 because the event described in subpart (i) had yet to occur. (c) The error was not discovered in 2007 because the event described in subpart (i) had yet to occur. (d) The error was not discovered in 2008 because the event described in subpart (i) had yet to occur. (e) The error was not discovered in 2009 because the event described in subpart (i) had yet to occur. (f) The error was not discovered in 2010 because the event described in subpart (i) had yet to occur. (g) The error was not discovered in 2011 because the event described in subpart (i) had yet to occur. (h) The error was not discovered in 2012 because the event described in subpart (i) had yet to occur. (iii) Medigus objects to subpart (iii) as premature insofar as it seeks Medigus' claim construction of |

## Appendix A. Comparison of Original Interrogatory Nos. 1-16
## to Revised Interrogatory Nos. 1-19

| | | |
|---|---|---|
| h.   2012;<br>(iii) how the supposed mutual clerical error (identified in the Petition for Certificate of Correction filed for the '871 Patent) is confirmed when the specification of the '871 Patent is evaluated; (iv) how the correction made to claim 1 of the '871 Patent does not alter the breadth and scope of the claimed invention; and (v) the identity of each person who participated in any significant way (e.g., providing technical input, reviewing or commenting on communications to or from the USPTO, preparing and filing papers in the USPTO) in the preparation and/or prosecution of the Petition for Certificate of Correction filed for the '871 Patent | | the '871 Patent and calling for legal conclusions and expert testimony.<br>(iv) Medigus objects to subpart (iv) as premature insofar as it seeks Medigus' claim construction of the '871 Patent and calling for legal conclusions and expert testimony.<br>(v) Kevin McCarthy, Kfir Luzzatto and Elazar Sonnenschien may have participated in the prosecution of the certificate of correction for the '871 Patent. |
| 6.   For each claim of the '871 Patent that Medigus contends is infringed by an Accused EndoChoice Product, describe the factual and legal bases to support such contention, Including (a) identifying each claim of the '871 Patent that Medigus contends EndoChoice has infringed, indicating whether the purported infringement is direct, induced or contributory; (b) stating whether Medigus contends the identified claims are infringed literally or under the doctrine of equivalents and describe the factual and legal bases for such contention; (c) providing a claim chart that compares each Accused EndoChoice Product to each and every limitation of each allegedly infringed claim and providing Medigus' proposed construction for each limitation Medigus contends should not be afforded its plain meaning; and (d) identifying any Document that Medigus contends | 7.  For each claim of the '871 Patent that Medigus contends is infringed by an Accused EndoChoice Product, describe the factual and legal bases to support such contention, Including (a) identifying each claim of the '871 Patent that Medigus contends EndoChoice has infringed, indicating whether the purported infringement is direct, induced or contributory; (b) stating whether Medigus contends the identified claims are infringed literally or under the doctrine of equivalents and describe the factual and legal bases for such contention; (c) providing a claim chart that compares each Accused EndoChoice Product to each and every limitation of each allegedly infringed claim and providing Medigus' proposed construction for each limitation Medigus contends should not be afforded its plain meaning; and (d) identifying any Document that Medigus | Medigus incorporates by reference Plaintiff and Counterclaim-Defendants' Initial Disclosures Under Section 4(c) of the Delaware Default Standard for Discovery, served February 25, 2016. |

# Appendix A. Comparison of Original Interrogatory Nos. 1-16
## to Revised Interrogatory Nos. 1-19

| | | |
|---|---|---|
| supports any contentions described in its answer to this Interrogatory. | contends supports any contentions described in its answer to this Interrogatory. | |
| 7.   Describe the legal and factual bases for Medigus' contention that EndoChoice has willfully infringed the '871 Patent, Including identifying all Documents and facts that Medigus contends supports its contention and identifying the three individuals most knowledgeable about such contentions. | 8.   Describe the legal and factual bases for Medigus' contention that EndoChoice has willfully infringed the '871 Patent. | EndoChoice and its officers had specific knowledge about the '871 Patent and EndoChoice's infringement thereof for years prior to the Present Litigation, and despite the objectively high likelihood EndoChoice's product would infringe the '871 Patent, EndoChoice proceeded to make, use, sell, and offer for sale its infringing FUSE product in the United States. Mr. Elazar Sonnenschein orally communicated to EndoChoice employees that they infringed the patent and written correspondence was provided to EndoChoice advising them of their infringement. At least Ari Levy of EndoChoice was directly informed of EndoChoice's infringement by Mr. Elazar Sonnenschein before the year 2013. At least Douglas Ladd and Yoram Ashery of EndoChoice were directly informed of EndoChoice's infringement by Mr. Elazar Sonnenschein during the years 2013 and/or 2014. Additionally, EndoChoice personnel and officers were informed of EndoChoice's infringement during DDW 2013 and the 2014 JP Morgan Annual Healthcare Conference. Furthermore, EndoChoice had actual notice of the '871 Patent prior to the filing of the Complaint as detailed in the Complaint. Medigus will produce relevant, non-privileged documents responsive to this interrogatory pursuant Federal Rule of Civil Procedure 33(d). |
| 8.   Describe in detail any joint development or other collaborative efforts between Medigus (Including by any Medigus employee, agent, consultant or representative) and Peer Medical Ltd. (Including by any Peer Medical employee, agent, consultant or representative) Relating to any | 9.   Describe in detail any joint development or other collaborative efforts between Medigus (Including by any Medigus employee, agent, consultant or representative) and Peer Medical Ltd. (Including by any Peer Medical employee, | None. |

Case 1:15-cv-00505-LPS-CJB   Document 628-1   Filed 06/19/19   Page 36 of 50 PageID #: 10393
Case 1:15-cv-00505-LPS-CJB   Document 671-1   Filed 07/07/16   Page 6 of 9 PageID #: 823

Appendix A. Comparison of Original Interrogatory Nos. 1-16
to Revised Interrogatory Nos. 1-19

| | | |
|---|---|---|
| endoscopy product and identify all Documents Relating to such efforts. | agent, consultant or representative) Relating to any endoscopy product. | |
| 9.   Describe in detail when and how Medigus first: (1) became aware of each Accused EndoChoice Product and (2) concluded that each Accused EndoChoice Product infringed a claim of the '871 Patent, Including identifying all Documents Relating to such facts and identifying the three individuals most knowledgeable about such facts. | 10. Describe in detail when and how Medigus first became aware of each Accused EndoChoice Product and concluded that each Accused EndoChoice Product infringed a claim of the '871 Patent. | None. |
| 10.  For each asserted claim of the '871 Patent, identify and explain each and every advantage of the claimed endoscope over endoscopes described by the Prior Art and each and every problem Medigus contends is solved by the claimed endoscope. | 11. For each asserted claim of the '871 Patent, identify and explain each and every advantage of the claimed endoscope over endoscopes described by the Prior Art and each and every problem Medigus contends is solved by the claimed endoscope. | None. |
| 11.  Describe in detail Medigus' corporate structure, Including identifying the relationship between Medigus and each of its predecessors, subsidiaries, successors, parents, assigns and affiliates, identifying the officers, directors, board members of each, and describing the ownership interest of Medigus in each. | 12. Describe in detail Medigus' corporate structure. | None. |
| 12.  Describe in detail any secondary consideration of non-obviousness Medigus contends exists for each asserted claim of the '871 Patent, Including: (i) any long felt but unresolved need for the claimed invention, Including who felt the need and when; (ii) any failure of another to develop the claimed invention, Including who attempted but failed to develop the invention and when; (iii) any | 13. Describe in detail any and all secondary consideration of non-obviousness Medigus contends exists for each asserted claim of the '871 Patent. | None. |

**Appendix A. Comparison of Original Interrogatory Nos. 1-16
to Revised Interrogatory Nos. 1-19**

| | | |
|---|---|---|
| commercial success attributable to the claimed invention, Including any licenses to the patent; (iv) any evidence of copying of the claimed invention, Including all persons having knowledge of the alleged copying; (v) whether the claimed invention received any awards or praise in the industry; (vi) any evidence of teaching away from the claimed invention by others; and (vii) any other secondary considerations of non-obviousness on which Medigus intends to rely, and identify all Documents that Medigus contends support its contention and identify the three individuals most knowledgeable about such contentions. | | |
| 13.  State whether Medigus is seeking a reasonable royalty, lost profits, or both from EndoChoice for the alleged infringement of the asserted claims of the '871 Patent and provide a detailed explanation of the basis for all damages and other monetary remedies that Medigus is seeking in the Present Litigation, Including (1) the royalty rate and base that Medigus contends is applicable for EndoChoice's alleged use of the '871 Patent and the factual and legal bases for such contentions; and (2) if Medigus alleges lost profits, the amount of such lost profits, the legal and factual bases therefore, Including the profits per unit, costs per unit, allocation of fixed costs compared to variable costs per unit, allocation of overhead, and whether You contend that any other products' sales are convoyed with Medigus' products. | 14.  State whether Medigus is seeking a reasonable royalty, lost profits, or both from EndoChoice for the alleged infringement of the asserted claims of the '871 Patent and provide a detailed explanation of the basis for all damages and other monetary remedies that Medigus is seeking in the Present Litigation. | None. |
| 14.  Identify all licenses, offers to license, and requests to license any Medigus endoscopy | 15.  Describe in detail all licenses, offers to license, and requests to license any Medigus | None. |

**Appendix A. Comparison of Original Interrogatory Nos. 1-16
to Revised Interrogatory Nos. 1-19**

| | | |
|---|---|---|
| product, the date of the offer or request to license, whether the offer or request was accepted or rejected, the date of execution of the license, the terms of the license, and the amount of any royalties or other payments offered, requested and/or agreed upon in connection with any licensing negotiation and/or agreement. | endoscopy product including the date of the offer or request to license, whether the offer or request was accepted or rejected, the date of execution of the license, the terms of the license, and the amount of any royalties or other payments offered, requested and/or agreed upon in connection with any licensing negotiation and/or agreement. | |
| 15. Identify all Persons who have invested more than $100,000 in Medigus or who currently own more than 1% of Medigus' outstanding common stock. | 16. Identify all Persons who have invested more than $100,000 in Medigus or who currently own more than 1% of Medigus' outstanding common stock. | None. |
| 16. For each product, project, or prototype that Medigus has developed since 2000 that is intended for use or used by physicians in the diagnosis or treatment of any gastro-intestinal conditions, Including inspection of the gastro-intestinal tract, detection of polyps, diagnosis and/or treatment of GERD, or use in gastric surgery: (a) provide all names, model numbers and internal names or codes used to identify the product, project, or prototype; (b) identify all substantive changes made to each such product, project or prototype from the time it was first developed until the latter of the present or the time it was discontinued; (c) identify any patents that cover any version of each such product, project, or prototype; (d) identify any such product, project, or prototype that was marked with the '871 Patent number, and (e) identify all Documents Relating to Your response to this interrogatory. | 17. For each product, project, or prototype that Medigus has developed since 2000 that is intended for use or used by physicians in the diagnosis or treatment of any gastro-intestinal conditions, Including inspection of the gastro-intestinal tract, detection of polyps, diagnosis and/or treatment of GERD, or use in gastric surgery, provide all names, model numbers and internal names or codes used to identify the product, project, or prototype.

18. For each product, project, or prototype identified in response to Revised Interrogatory No. 17, identify all substantive changes made to each such product, project or prototype from the time it was first developed until the latter of the present or the time it was discontinued.

19. For each product, project, or prototype identified in response to Revised Interrogatory No. 17, identify any patents that cover any version of | None. |

Case 1:17-cv-00608-LPS-CJB   Document 228-1   Filed 06/19/19   Page 39 of 50 PageID #:
10396
Case 1:15-cv-00505-LPS-CJB   Document 67-1   Filed 07/07/16   Page 9 of 9 PageID #: 326

**Appendix A. Comparison of Original Interrogatory Nos. 1-16
to Revised Interrogatory Nos. 1-19**

|  | each such product, project, or prototype and indicate whether each product, project, or prototype was marked with the '871 Patent number. |  |
| --- | --- | --- |

# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CONFLUENT SURGICAL, INC., INTEGRA    )
LIFESCIENCES CORPORATION AND         )
INTEGRA LIFESCIENCES SALES LLC,      )
                                     )
            Plaintiffs,              )
                                     )
      v.                             )    C.A. No. 17-688 (LPS) (CJB)
                                     )
HYPERBRANCH MEDICAL                  )
TECHNOLOGY, INC.,                    )
                                     )
            Defendant.               )

## DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFFS

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules, Defendant HyperBranch Medical Technology, Inc. ("HyperBranch") requests that Plaintiffs Confluent Surgical, Inc., Integra Lifesciences Corporation, and Integra Lifesciences Sales LLC (collectively, "Plaintiffs") answer separately, fully, in writing, and under oath the following Interrogatories within thirty (30) days after service thereof. Pursuant to Federal Rule of Civil Procedure 26(e), these Interrogatories are continuing in nature and therefore require Plaintiffs to furnish supplemental answers whenever it obtains different or additional knowledge, information, or belief relative to these Interrogatories.

## DEFINITIONS

As used herein, unless specifically indicated otherwise, the following terms shall have the indicated meanings:

A.    The terms "Confluent," "Integra," "Plaintiffs," "You," and "Your" refer to Confluent Surgical, Inc., Integra Lifesciences Corporation, and Integra Lifesciences Sales LLC, collectively and individually, as well as all agents, servants, employees, representatives

comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in Plaintiffs' possession, custody, or control, in which case the name and address of any person or entity known or believed by you to have possession, custody, or control of that information or category of information must be identified.

7.      If Any answer to an Interrogatory is qualified in Any way, set for the details of such qualification.

## INTERROGATORIES

### INTERROGATORY NO. 1.

On a claim-by-claim basis for each and every Asserted Claim, identify what You contend to be the effective filing date for the claim, including all supporting facts and evidence for any identified effective filing date such as, without limitation, for every element of the claim the specific page and lines of any application(s) that you contend supports an identified effective filing date.

### INTERROGATORY NO. 2.

On a claim-by-claim basis for each and every Asserted Claim, identify what You contend to be the date of invention for the claim, including all supporting facts and evidence for any such identified date of invention.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CONFLUENT SURGICAL, INC., INTEGRA LIFESCIENCES CORPORATION AND INTEGRA LIFESCIENCES SALES LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 17-688 (LPS) (CJB) |
| HYPERBRANCH MEDICAL TECHNOLOGY, INC., | ) ) ) | |
| Defendant. | ) ) | |

## DEFENDANT'S SECOND SET OF INTERROGATORIES TO PLAINTIFFS (NO. 3)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules, Defendant HyperBranch Medical Technology, Inc. ("HyperBranch") requests that Plaintiffs Confluent Surgical, Inc., Integra Lifesciences Corporation, and Integra Lifesciences Sales LLC (collectively, "Plaintiffs") answer separately, fully, in writing, and under oath the following Interrogatories within thirty (30) days after service thereof. Pursuant to Federal Rule of Civil Procedure 26(e), these Interrogatories are continuing in nature and therefore require Plaintiffs to furnish supplemental answers whenever it obtains different or additional knowledge, information, or belief relative to these Interrogatories.

## DEFINITIONS

As used herein, unless specifically indicated otherwise, the following terms shall have the indicated meanings:

A.      The terms "Confluent," "Integra," "Plaintiffs," "You," and "Your" refer to Confluent Surgical, Inc., Integra Lifesciences Corporation, and Integra Lifesciences Sales LLC, collectively and individually, as well as all agents, servants, employees, representatives

comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in Plaintiffs' possession, custody, or control, in which case the name and address of any person or entity known or believed by you to have possession, custody, or control of that information or category of information must be identified.

7.     If Any answer to an Interrogatory is qualified in Any way, set for the details of such qualification.

## INTERROGATORIES

## INTERROGATORY NO. 3.

On a claim-by-claim basis, describe in complete detail all of your contentions, and identify all supporting evidence therefor, that each asserted claim of the Patents-in-Suit is not invalid in view of each and every invalidity contention made by HyperBranch, including without limitation any contention by You that: (a) any given claim or claim term is not invalid for indefiniteness, lack of written description, and/or lack of enablement; (b) any limitations in a claim that You contend are not satisfied by HyperBranch's invalidity arguments (including an express identification of the limitation and the full basis for Your contention that the limitation is not satisfied); and (c) whether You contend that any art (i.e., references, articles, manuals, brochures, products . . . etc.) in HyperBranch's invalidity arguments does not have a date sufficient to render it prior art to any challenged claim and the full basis for any such contention by You.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CONFLUENT SURGICAL, INC., INTEGRA LIFESCIENCES CORPORATION AND INTEGRA LIFESCIENCES SALES LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 17-688 (LPS) (CJB) |
| HYPERBRANCH MEDICAL TECHNOLOGY, INC., | ) ) ) ) | |
| Defendant. | ) | |

## DEFENDANT'S THIRD SET OF INTERROGATORIES TO PLAINTIFFS (NOS. 4-15)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules, Defendant HyperBranch Medical Technology, Inc. ("HyperBranch") requests that Plaintiffs Confluent Surgical, Inc., Integra Lifesciences Corporation, and Integra Lifesciences Sales LLC (collectively, "Plaintiffs") answer separately, fully, in writing, and under oath the following Interrogatories within thirty (30) days after service thereof. Pursuant to Federal Rule of Civil Procedure 26(e), these Interrogatories are continuing in nature and therefore require Plaintiffs to furnish supplemental answers whenever it obtains different or additional knowledge, information, or belief relative to these Interrogatories.

## DEFINITIONS

As used herein, unless specifically indicated otherwise, the following terms shall have the indicated meanings:

A.    The terms "Confluent," "Integra," "Plaintiffs," "You," and "Your" refer to Confluent Surgical, Inc., Integra Lifesciences Corporation, and Integra Lifesciences Sales LLC, collectively and individually, as well as all agents, servants, employees, representatives (including attorneys), and other Persons or entities directly or indirectly subject to Your control

## INTERROGATORIES

### INTERROGATORY NO. 4.

Describe in detail the amount, method of calculation, and all facts and evidence supporting any calculation for any damages You claim in this Action, and specifically identify and explain the type and amount of damages suffered by each particular Plaintiff as well as the timeframe under which You contend such damages have occurred.

### INTERROGATORY NO. 5.

Describe in detail all agreement(s), potential agreement(s), offers for licenses, or license(s) with any Person relating to the Asserted Patents, Related Patents, or Related Applications.  A complete response will include, but is not limited to: a detailed description of each identification of a Person allegedly using the inventions of the Asserted Patents, negotiation, offer, request, and counteroffer relating to any agreement, potential agreement, or License; all analysis performed by and/or exchanged with You or any Persons or entities during any negotiation for an agreement, potential agreement or license; the date(s) on which each agreement or license became effective; the Persons responsible for negotiating each agreement, potential agreement or license; the consideration paid for each agreement, potential agreement, or license; and an identification of all Documents related to each agreement, potential agreement or license.

### INTERROGATORY NO. 6.

Identify all products made, used, sold or imported at any time by any owner or licensee of any of the Asserted Patents, and for each such product, state whether You contend that the product has always been marked in accordance with 35 U.S.C. § 287(a), identify the patent number of each Asserted Patent with which it was marked, identify any and all evidence that

shows and/or tends to show that the product has or has not been marked in accordance with 35 U.S.C. § 287(a), and identify all Persons having knowledge of such marking or lack of marking.

**INTERROGATORY NO. 7.**

Describe in detail all facts and evidence that you contend support your claim for permanent injunctive relief.

**INTERROGATORY NO. 8.**

Describe in detail all of Your efforts to develop a gas-assisted spray applicator with internal mixing inside the spray tip for DuraSeal, including all facts and evidence related to any such gas-assisted internal-mixing spray applicator.

**INTERROGATORY NO. 9.**

Describe the complete factual and legal basis for Your assertions that any alleged infringement by Defendant is willful.

**INTERROGATORY NO. 10.**

Describe the complete factual and legal basis for Your assertion that this is an exceptional case under 35 U.S.C. § 285.

**INTERROGATORY NO. 11.**

Describe in detail all facts and evidence on which You intend to rely to negate the application of the doctrine of equitable estoppel in this Action.

**INTERROGATORY NO. 12.**

On an element-by-element basis for each and every Asserted Claim, identify all supporting facts and evidence for each element to support your asserted date of invention in response to Interrogatory No. 2.

**INTERROGATORY NO. 13.**

On a claim-by-claim basis for each and every claim of the Asserted Patents, identify each individual who You contend contributed to the conception of the invention set forth in each claim, including all supporting facts and evidence of the contribution to the conception of each claim by the identified individual(s) and the dates of such contribution(s).

**INTERROGATORY NO. 14.**

Identify all Persons and information repositories including, but not limited to, databases or document repositories, that were consulted or reviewed in preparation to respond to HyperBranch's Requests for Admission in this Action, and describe in detail the consultation with each such Person and the review of each such information repository.

**INTERROGATORY NO. 15.**

Identify all Persons and information repositories including, but not limited to, databases or document repositories, that were consulted or reviewed in preparation to respond to HyperBranch's Interrogatories in this Action, and describe in detail the consultation with each such Person and the review of each such information repository.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Stephen J. Kraftschik*
Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
Stephen J. Kraftschik (#5623)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
jtigan@mnat.com
skraftschik@mnat.com

*Attorneys for HyperBranch Medical Technology, Inc.*

OF COUNSEL:

Jonathan G. Graves
COOLEY LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190
(703) 456-8000

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CONFLUENT SURGICAL, INC., INTEGRA LIFESCIENCES CORPORATION, and INTEGRA LIFESCIENCES SALES LLC, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | )   C.A. No. 17-688 (LPS) (CJB) ) |
| HYPERBRANCH MEDICAL TECHNOLOGY, INC., | ) ) ) |
| Defendant. | ) ) |

**DEFENDANT'S FOURTH SET OF
<u>INTERROGATORIES TO PLAINTIFFS (NOS. 16-18)</u>**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules,

Defendant HyperBranch Medical Technology, Inc. ("HyperBranch") requests that Plaintiffs

Confluent Surgical, Inc., Integra Lifesciences Corporation, and Integra Lifesciences Sales LLC

(collectively, "Plaintiffs") answer separately, fully, in writing, and under oath the following

Interrogatories within thirty (30) days after service thereof.  Pursuant to Federal Rule of Civil

Procedure 26(e), these Interrogatories are continuing in nature and therefore require Plaintiffs to

furnish supplemental answers whenever it obtains different or additional knowledge,

information, or belief relative to these Interrogatories.

**<u>DEFINITIONS AND INSTRUCTIONS</u>**

HyperBranch hereby incorporates by reference the Definitions and Instructions set forth

in its First Set of Interrogatories to Plaintiffs (Nos. 1-2), Second Set of Interrogatories to

Plaintiffs (No. 3), and Third Set of Interrogatories to Plaintiffs (Nos. 4-15), subject to the

following additional definitions and instructions.

## INTERROGATORIES

## INTERROGATORY NO. 16.

On a claim-by-claim basis, state whether You contend that HyperBranch's ET Baffle-2 Configuration does or does not satisfy all limitations of each Asserted Claim.

## INTERROGATORY NO. 17.

Describe in detail and identify all evidence supporting Your response to Interrogatory No. 16 for each Asserted Claim, including the specific identification of each claim limitation from each Asserted Claim You contend is not satisfied by HyperBranch's ET Baffle-2 Configuration and complete and detailed infringement claim charts for each Asserted Claim for which You contend all limitations are satisfied by HyperBranch's ET Baffle-2 Configuration.

## INTERROGATORY NO. 18.

For every product identified in Your response to Interrogatory No. 6 as being marked with the patent number of any Asserted Patent, describe in complete detail and identify all supporting evidence on a claim-by-claim basis and in claim chart format all of Your contentions that each such product practices the Patents-in-Suit with which it is marked.